# United States Court of Appeals
## For the First Circuit

No. 00-1538

UNITED STATES OF AMERICA,

Appellant,

v.

CHARLES WILKERSON,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Lynch, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lipez, Circuit Judge

Theodore B. Heinrich, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief, for appellant.

William A. Hahn, with whom Hahn & Matkov was on brief, for appellee.

**LIPEZ, Circuit Judge**.  On October 29, 1999, a jury found Charles Wilkerson guilty on one count of crack cocaine distribution. Wilkerson's subsequent motion for a new trial was granted.  In granting the motion, the district court concluded that it erred in excluding evidence of a prior bad act of the prosecution's informant offered to impeach his credibility.  Furthermore, the court concluded that the error was not harmless, primarily because of concerns about the effectiveness of defense counsel during the trial.

After a careful review of the record, we conclude that we must vacate the order granting a new trial.  The exclusion of evidence here was unmistakably harmless, and there are no claims of procedural unfairness and no claims of constitutional dimension.  Under these circumstances, the new trial order did not meet the requirement of Fed. R. Crim. P. 33 that the order be in the interests of justice, and its issuance was not a proper exercise of discretion.

**I.**

**A. The Charges**

We recount the circumstances of the charges in this case in detail because of the importance of the harmless error analysis at trial and on appeal.  Charles Wilkerson was initially indicted with

thirty other individuals for conspiracy to distribute crack cocaine as members and associates of the Castlegate street gang. The defendant was tried separately. The government elected to proceed only on the two counts of crack cocaine distribution in violation of 21 U.S.C. § 841(a)(1) charged in the indictment. These charges were based upon controlled purchases made at Blue Hill Avenue in Boston. The witnesses in each instance were under the supervision of Drug Enforcement Administration (DEA) agents and officers of the Boston Police Department.

The first alleged sale was on April 30, 1997, involving less than one gram of cocaine. At trial, the jury could not reach a verdict on this count. The second sale on July 8, 1997, involving approximately one ounce of cocaine, was made to cooperating witness Steven Williams, who had an audio transmitter and $400. Williams was enlisted to purchase cocaine from Castlegate gang member Shawn Mells, also known as "Smiles." DEA Task Force Agent Joao Monteiro assisted in the transaction, driving Williams to Blue Hill Avenue and Castlegate Road in an undercover vehicle.

At the time Williams attempted to contact Mells, he initially approached Thomas Hargrove, also known as "Buzz." When Williams asked to arrange a purchase, Hargrove called up to a third floor apartment and told an unidentified female to get "Smiles" or "Chuck" for the transaction. Williams checked in with Monteiro at the undercover

vehicle and then proceeded up Blue Hill Avenue with Hargrove. Williams met with the dealer, who was driving a blue Toyota. Although neither Monteiro's observation nor the audiotape of the conversation resulted in an identification of Wilkerson as the individual in the car, Williams identified the dealer as Charles Wilkerson, whom he knew previously and indeed greeted on the audiotape with familiarity, referring to him as "Chuck" during the exchange. "Chuck" indicated that he would return in twenty minutes with the agreed amount of crack cocaine, one ounce in exchange for $800.

Twenty minutes later, Hargrove assured Williams that "Chuck" would come by shortly. When the blue Toyota returned, accompanied by a green Toyota, Williams says he saw the defendant in the green car. He entered that vehicle, and they then drove a couple of blocks to complete the transaction. Monteiro followed in his car. When the purchase was completed, Williams asked how he could contact "Chuck" about future deals. A piece of paper was passed, with the name "Chuck" and two phone numbers written on it. One of these numbers proved to be a cell phone number subscribed to by the defendant. Williams's account of events is corroborated by Monteiro's observation (though he could not identify the defendant), the audiotape of the transaction obtained from the wire worn by Williams, and a videotape of the scene made from a small, concealed camera on the undercover vehicle.

**B. The Court's Evidentiary Ruling**

Wilkerson's trial began on October 18, 1999, and lasted five days.  On count two, Williams was a crucial witness, and the defense's cross-examination involved several exchanges intended to undermine his credibility.  First, the defense questioned Williams about his agreement to cooperate with the DEA, and the approximately $12,000 and other benefits he had received over a two-year period for this cooperation.  He was questioned about his prior history of dealing drugs; his failure to file income tax returns; and his convictions for assault and battery of a police officer and improper attachment of a motor vehicle plate.  Over the objection of the government, the defense also asked him about two default warrants from 1993 and 1994 for failure to return leased property.  He acknowledged a conviction on this charge as well.  When Williams attempted to explain that this conviction was a mistake, even though it appears on his record, the government asked to approach the bench and objected again.

The court acknowledged the admissibility of prior convictions and open charges against the witness,[1] but asked defendant's counsel where he was going with the default warrants.  Counsel stated: "I'm not going at it as prior convictions.  I'm going at it as prior instances of dishonest conduct."  The court replied: "You can't go at it that way, that is overruled.  I thought you were talking about a deal.  This

---

[1] By open charges the court was referring to any pending charges covered by the cooperation agreement with the government.

-5-

is not a deal.  You can't have instances of dishonest conduct if it didn't result in a conviction, and if you're going to do it by the conviction route, it has to be certified copies.  So this line of questioning, unless it's the appropriate way, is excluded."[2]  Defense counsel then sought permission to inquire about an additional offense, Williams's receipt of stolen property.  Noting that it was not clear from the record whether this incident included a conviction, the court said: "[I]t's either a conviction or it's something that was a current deal.  You can't just go into prior bad conduct."  Defense counsel replied: "Your honor, I think I'm entitled to get into prior instances of dishonest conduct on the witness."  The court responded: "I don't agree."  Defense counsel made an offer of proof on using the receipt of stolen property charge as evidence of a prior bad act.  The court replied:

> [Y]ou're not allowed to, that's not appropriate
> impeachment.  To talk about dishonest conduct,
> you can talk about prior instances of lying,
> perhaps an instance where someone lied under
> oath, but you can't just get into a barrage about
> dishonest conduct.  It's not under the rules and
> that's  what  we  have  to  go  by.   So that's
> excluded.

After this exchange defense counsel continued cross-examination of Williams without further objection.

---

[2] Although the court felt the inquiry regarding the default warrants was inappropriate without the record of conviction, it did not strike Williams's admission to a conviction for failure to return leased property.

## C. Motion for a New Trial

The defendant filed a motion for a new trial on three grounds: limitations placed on the cross-examination of Williams; the jury's receipt of prejudicial information that the court had excluded from evidence; and the prosecution's innuendo at trial that the defendant was a dangerous individual. Attached to the motion was a copy of the state court complaint relating to the receipt of stolen property charge, which alleges that on August 4, 1992, officers found two stolen car tires resting on the rear bumper of Williams's motor vehicle after receiving a report that a group of males was stealing tires from another vehicle.

In considering the motion, the court only addressed its evidentiary ruling during the cross-examination of Williams. The court said that it had erred in premising its evidentiary ruling on Federal Rule of Evidence 609, relating to prior convictions, rather than Rule 608(b), involving prior bad acts. While noting that defense counsel did not explicitly cite to the appropriate rule, the court acknowledged that it might well have permitted use of the 1992 receipt of stolen property charge for impeachment.

We quote from the court's bench ruling at length to show the court's concern about the effectiveness of counsel at trial, and the interplay of that concern with its harmless error analysis:

[T]he government's brief very effectively goes through all the things that I allowed Mr. Palmer [defendant's counsel] to get into in the examination of Steven Williams. And, in fact, one could conclude that it's harmless error. I'm not sure that I do. And so I went back over the whole trial.

And part of the problem here is that evaluating where this fits in the whole trial, let me first say a couple of things.

I was troubled by the level of preparation of counsel in this case. Whether it rises to ineffective assistance of counsel, I don't know. But I certainly was troubled by that.

I was troubled when, on the fourth day of trial, when I asked, have you been to the scene, been to where the building from which the surveillance took place, the answer was no. And, yet, you were asking for a view, which would have been a blind view. . . .

And I was troubled by the implication that – I mean, on the very first day of trial you hadn't realized that there was going to be a police officer who was going to testify that he recognized Wilkerson, not just – not just a cooperating witness. But that's a devastating piece of evidence, that a police officer who . . . had some prior familiarity with Mr. Wilkerson said that's the man.

And even in terms of the preservation of this issue – I don't think that this is being defensive, but it conceivably can be. When I looked at how you presented the issue to me, you didn't at that point have the documents that you have now. You didn't show me when this receiving stolen property charge . . . had come from. You didn't make any of the arguments that you're making now. You didn't cite to that rule . . . .

So, when I step back from all of this, I'm not sure where I am in terms of harmless error. I was troubled by the way the case was litigated as it was going on. I'm troubled in reviewing the record afterwards.

-8-

In the end, the court decided that the exclusion from cross-examination of the receipt of stolen property charge was not harmless error, "[g]iven my concerns about the overall trial," and granted the motion for a new trial.

## II.

"Motions for a new trial are directed to the broad discretion of the trial judge, who may weigh the evidence and evaluate the credibility of witnesses in considering such a motion." United States v. Indelicato, 611 F.2d 376, 387 (1st Cir. 1979). However, "[t]he remedy of a new trial is sparingly used, and then only where there would be a 'miscarriage of justice . . . and where the evidence preponderates heavily against the verdict.'" Id. (quoting United States v. Leach, 427 F.2d 1107, 1111 (1st Cir. 1970)). In United States v. Glantz, 810 F.2d 316 (1st Cir. 1987), we reversed the grant of a new trial. Addressing the district court's concerns, we concluded: "The substantially appropriate nature of the prosecutor's comments, the repeated correction of any possible deficiencies, and the strong government case all lead to the conclusion that the district court abused its discretion in taking the rare step of ordering a new trial." Id. at 324. In Glantz, as here, we do not reach our conclusion lightly. See id. at 321; see also United States v. Paniagua-Ramos, 135 F.3d 193 (1st Cir. 1998) (affirming grant of new trial where jury charge was prejudicial).

## A. The Court's Concerns about the Effectiveness of Counsel

Not surprisingly, defense counsel did not argue his ineffectiveness at trial as one of the grounds for granting a new trial. Nevertheless, there is no formal bar to the court's sua sponte consideration of the ineffectiveness of counsel in evaluating a timely motion for a new trial.[3] In rare instances, when the record for review is adequate, we will consider an ineffective assistance of counsel claim on direct appeal and order appropriate relief if there has been a denial of the Sixth Amendment right to counsel. See United States v. Natanel, 938 F.2d 302 (1st Cir 1991) ("[W]here the critical facts are not genuinely in dispute and the record is sufficiently developed to allow reasoned consideration of an ineffective assistance claim, an appellate court may . . . determine the merits of such a contention on direct appeal.") Similarly, if the trial court considering a motion for a new trial concluded that it had an adequate basis for finding that a defendant had been denied his Sixth Amendment right to the assistance of counsel, the court could rule that a new trial was necessary to avoid a miscarriage of justice. Cf. United States v. Soto-Alvarez, 958 F.2d 473, 479 (1st Cir. 1992) (finding no miscarriage of justice in denial of a motion for a new trial given the lack of evidence of ineffective assistance).

---

[3] "A motion for a new trial based on any [] grounds [other than newly discovered evidence] may be made only within 7 days after the verdict or finding of guilty . . . ." Fed. R. Crim. P. 33.

-10-

The more likely impediment to such a ruling is a practical one. "Determining the existence of ineffective assistance generally requires an 'independent factual inquiry into the merits of the claim,'" United States v. Sutherland, 929 F.2d 765, 774 (1st Cir. 1991) (quoting United States v. Caggiano, 899 F.2d 99, 100 (1st Cir. 1990)), usually in the form of an evidentiary hearing in a collateral proceeding. See United States v. Jadusingh, 12 F.3d 1162, 1169-70 (1st Cir. 1994); Brien v. United States, 695 F.2d 10, 13 (1st Cir. 1982). The court considering an ineffective assistance claim must apply the two-part test laid out in Strickland v. Washington, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance fell below an objective standard of reasonableness. Id. at 687. Second, the defendant must "affirmatively prove prejudice," meaning "that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 693-94.

In granting the motion for a new trial here, the court did not hold an evidentiary hearing and did not make a finding of ineffective assistance of counsel pursuant to the Strickland test. Instead, after reviewing the transcript of the trial, the court explicitly stated that it was not making such a finding despite its concerns about defense counsel's performance: "I was troubled by the level of preparation of counsel in this case. Whether it rises to

-11-

ineffective assistance of counsel, I don't know."  We do not know whether the court's reservations about an ineffective assistance of counsel finding related to the performance or prejudice prong of the Strickland test, or both.  We do know, however, that the court had to address the issue of prejudice in concluding that its refusal to permit cross-examination about the receipt of stolen property charge was not harmless error.  That is, the court had to decide that it was highly probable that the evidentiary error contributed to the jury verdict.  See United States v. Rose, 104 F.3d 1408, 1414 (1st Cir. 1997).  In essence, the court seems to be saying that its mistake and the perceived mistakes of counsel, in combination, produced a miscarriage of justice that requires a new trial.

In our view, however, the court's concern about defense counsel's performance does not strengthen its harmless error analysis.  The court identifies three instances of poor performance by defense counsel: asking for a blind view, ignorance of a police officer identification, and mishandling the receipt of stolen property evidentiary issue.  Of these three instances, only the last related to the charge for which Wilkerson was convicted, rendering the other two irrelevant to the harmless error inquiry.  With respect to the last instance, even if counsel's poor handling of the receipt of stolen property evidentiary issue led the court into error, that fact alone is also insignificant.  What matters is whether that evidentiary ruling

was prejudicial to the defendant pursuant to the harmless error standard.

## B. Harmless Error

In considering the motion for a new trial, the court decided that it excluded the evidence of prior receipt of stolen property by a key witness because of a misunderstanding about the grounds for admission pursuant to Federal Rule of Evidence 609 and Rule 608(b).[4] Given the discretion available under 608(b), the court said that, "if I had been shown [the basis for admissibility under that rule], I probably would have let it in on the theory that Mr. Williams was the main witness and you were entitled to go at him in any way that you lawfully could."

An error in the exclusion of evidence does not necessitate a new trial when that error can be deemed harmless. Fed. R. Crim. P. 52(a). An error "will be treated as harmless if it is highly probable that the error did not contribute to the verdict." Rose, 104 F.3d at 1414.[5] In conducting a harmless error analysis, the court "must mull

---

[4] The court excluded the evidence because it understood that admission was being sought under Federal Rule of Evidence 609, which establishes the parameters for admission of prior convictions. Rather, the defense was attempting to impugn the witness's credibility on cross-examination by raising a specific instance of conduct that is "probative of truthfulness or untruthfulness" under Federal Rule of Evidence 608(b). According to the Rule, such events may be inquired into "in the discretion of the court." Fed. R. Evid. 608(b).

[5] This case does not involve a constitutional error that would require the error to be harmless beyond a reasonable doubt. See United

-13-

the ruling in context, giving due weight to the totality of the relevant circumstances." <u>Ruiz-Troche</u> v. <u>Pepsi Cola of P. R. Bottling Co.</u>, 161 F.3d 77, 87 (1st Cir. 1998).  It would be inappropriate if "the court unduly emphasized the problems that existed and, therefore, unnecessarily intervened in a process that – although imperfect – adequately protected defendants' rights." <u>Glantz</u>, 810 F.2d at 320-21.

Although the excluded evidence was offered to further impeach Williams's credibility, there was already substantial impeachment evidence in the case.  The cross-examination had included Williams's past drug-dealing activities, his history of tax evasion, and his convictions for assault on a police officer, illegal attachment of a license plate and failure to return leased property.  Defense counsel also had the opportunity to explore Williams's relationship with the government, including the DEA's payment for his services as a cooperating witness.  Williams's history with members of the Castlegate gang was also explored.  At best, the excluded evidence was cumulative.  Admission of the additional charge regarding receipt of stolen property in 1992 is not likely to have altered the jury's assessment of the witness's credibility.

Furthermore, the evidence against Wilkerson was strong.  While it is true that Williams is the only witness who identified Wilkerson as the distributor, other evidence corroborates his account.

States v. <u>Leon-Delfis</u>, 203 F.3d 103, 112 (1st Cir. 2000).

-14-

Agent Monteiro witnessed the entirety of Williams's crack cocaine purchase and supports Williams's report of the transaction. Both video and audiotapes of the transaction also match Williams's testimony. Finally, one of the phone numbers "Chuck" provided to arrange future drug purchases matches Wilkerson's registered cell phone number. In light of this evidence, and the impeachment evidence already in the case, it is highly probable that the exclusion of one seven-year-old charge for receipt of stolen property from the cross-examination of Williams did not contribute to the verdict, see United States v. Rodriguez Cortes, 949 F.2d 532, 543 (1st Cir. 1991), and hence the error, if any, was harmless. The motion for a new trial should not have been granted.

**The order granting a new trial is <u>vacated</u>. The case is remanded for further proceedings consistent with the opinion.**