# United States Court of Appeals
## For the First Circuit

No. 03-2148

UNITED STATES OF AMERICA,

Appellee,

v.

NORA F. MORAN,

Defendant, Appellant.

No. 03-2149

UNITED STATES OF AMERICA,

Appellee,

v.

JOHN M. MORAN,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]

Before

Selya, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

        Chauncey B. Wood, with whom Jean Larocque and Shea, Larocque
& Wood were on brief, for appellant Nora F. Moran.
        Francis J. DiMento, with whom Jason A. Kosow and DiMento &
Sullivan were on brief, for appellant John M. Moran.
        Christopher L. Varner, Assistant United States Attorney, with
whom Michael J. Sullivan, United States Attorney, was on brief, for
appellee.

_____

December 15, 2004

_____

**SELYA, Circuit Judge**. This case is before us for a second time — but with the parties' roles reversed. In its first iteration, a panel of this court set aside the district court's entry of judgment n.o.v. for the defendants and reinstated guilty verdicts returned by the jury. See United States v. Moran, 312 F.3d 480 (1st Cir. 2002) (Moran I). The district court subsequently declared untimely the defendants' belated efforts to secure a new trial and imposed sentence. The defendants now appeal.

This time around, we are asked to reconsider the original panel decision; to reverse the district court's determination that the defendants did not file a timeous motion for new trial; and to grant relief from the judgments of conviction on the ground that the defendants were burdened by ineffective assistance of counsel. In addition, the defendants advance, for the first time, claims of instructional error and prosecutorial misconduct. We reject outright the vast majority of these animadversions. As to the ineffective assistance claims, however, we find the record insufficient to rule definitively, and so dismiss those claims without prejudice to their renewal in proceedings under 28 U.S.C. § 2255.

## I. BACKGROUND

We sketch the facts of the offenses of conviction, referring the reader who hungers for more exegetic detail to our

-3-

earlier opinion. See Moran I, 312 F.3d at 482-87. Following the established praxis, we rehearse these facts in the light most compatible with the verdicts. See, e.g., United States v. Hussein, 351 F.3d 9, 11 (1st Cir. 2003).

In October of 1986, John M. Moran, an attorney who represented, inter alios, First American Bank for Savings, met with Edgar Puente and David Boersner, aspiring real estate developers, who were seeking financing for a pair of projects in Boston, Massachusetts. The developers hired Mr. Moran as their mortgage broker and agreed to pay him 1.5% of the face amount of any loans that he procured on their behalf. Mr. Moran arranged a meeting between the developers and a First American loan officer, Edmund Noke, during which Noke agreed to lend Puente and Boersner $17,000,000. Following this meeting, the developers agreed that Mr. Moran would receive a 20% profit interest in the two projects. His wife, Nora F. Moran — who sat on the board of directors of First American — created the Moran Development Group Trust (MDG Trust) to hold the equity interest and named herself sole trustee. Under state law, the identity of the beneficiaries of the MDG Trust was not a matter of public record.

In November of 1986, Mr. Moran submitted formal loan proposals to First American on behalf of Puente and Boersner. He disclosed neither his 20% profit interest nor his anticipated 1.5% brokerage fee, even though he was duty bound to do so. First

-4-

American's executive committee approved the loans in December, and the bank designated Mr. Moran as its closing attorney. Mr. Moran conducted the closing, charged the bank handsomely for his services, and (unbeknownst to the bank) collected $255,000 from the developers. He never submitted the customary settlement sheets, which would have detailed the use of the loan proceeds (and, thus, would have revealed his conflicted interests).

The record indicates that the Puente/Boersner loans were among 153 loans approved that month by the bank's executive committee. The committee considered those loans for approval in two groups. The first vote approved a block of 140 loans, and the second approved the remaining 13. The Puente/Boersner loans were part of the second (smaller) lot. The executive committee sent a report of its December activities to the bank's board of directors, but only provided details as to the first batch of loans.

In January 1987, the board of directors, including Mrs. Moran, met to consider the December report. The parties fiercely contest exactly what transpired at that meeting. The government's version, disputed by the defendants, is that Mrs. Moran voted either to ratify or approve the Puente/Boersner loans instead of disqualifying herself due to her and her husband's financial interests. Whatever happened that day, it is clear that Mrs. Moran never disclosed to First American the Morans' financial interests in the loans.

By 1988, the Puente/Boersner loans were underwater. Spurred by the prospect of a substantial loss, First American began an investigation that would eventually uncover the manifold irregularities surrounding the loans and the Morans' interests in them. In a meeting with First American's outside counsel, Mrs. Moran admitted that she knew about her husband's financial stake at the time the loans were approved. For his part, Mr. Moran claimed that he had fully recounted his conflicted interests to Noke. The bank's records did not reflect any such disclosure.

Even though the Puente/Boersner loans eventually soured and the bank failed, the saga continued. On July 9, 1997, a federal grand jury indicted the Morans for, inter alia, committing bank fraud by failing to disclose their financial interests in the Puente/Boersner projects, 18 U.S.C. § 1344, aiding and abetting bank fraud, id. § 2, and conspiring to commit bank fraud, id. § 371.[1] Trial commenced on May 17, 1999. As to Mr. Moran, the government introduced evidence describing his fiduciary duties to the bank. It also adduced evidence showing that the paperwork he had submitted to First American did not disclose either the brokerage or profit-sharing arrangements. Finally, Noke testified that Mr. Moran never divulged his economic stake in the development

---

[1]The indictment contained a second, unrelated count of bank fraud against Mrs. Moran. The district court granted her motion for judgment of acquittal as to that count at the close of the government's case in chief, Moran I, 312 F.3d at 485-86, and we eschew any further reference to it.

projects and stated that such a revelation would have led to the filing of an insider transaction report. The government then showed that no such report appeared in the bank's archives.

The government's case against Mrs. Moran was thinner. It did, however, introduce evidence limning her regulatory and fiduciary duties and showing that she was involved in various ways with the Puente/Boersner loans (e.g., she had visited the sites during a pre-loan inspection, had created the MDG Trust and named herself as trustee, and was generally privy to her husband's financial dealings). The government also proved that Mrs. Moran had failed to apprise her fellow board members about the Morans' financial interests in the Puente/Boersner projects.[2]

The defense moved for judgment of acquittal following the close of the government's case in chief. Fed. R. Crim. P. 29(a). The district court denied the motions. During the defense case, Mr. Moran testified that he had made full disclosure to Noke. Mrs. Moran did not testify. The government presented one rebuttal witness. At the close of all the evidence, the defense again moved for judgment of acquittal. The district court reserved decision, Fed. R. Crim. P. 29(b), and the jury found the defendants guilty on all the submitted counts.

_____

[2]As mentioned above, the government tried to show that, on January 15, 1987, Mrs. Moran had voted to ratify or approve the Puente/Boersner loans, instead of disqualifying herself from the vote. The <u>Moran I</u> panel did not rely on this evidence, <u>see</u> 312 F.3d at 492, and we do not dwell on it at this juncture.

The verdicts were recorded on July 14, 1999, and judgment entered on that date. The next day, the Morans filed a renewed motion for judgment of acquittal. See Fed. R. Crim. P. 29(c). The district court granted the Morans an extension of time within which to file supplemental memoranda. On September 15, each defendant filed a supplemental memorandum that asked the court, among other things, to treat the joint July 15 motion, in the alternative, as a motion for new trial under Fed. R. Crim. P. 33. The government opposed both the motion for judgment of acquittal and the requests for conversion. The district court pondered the matter at length.[3] On July 13, 2000, it granted the motion for judgment of acquittal without addressing the conversion requests.

The government appealed from this ruling. We reversed. Moran I, 312 F.3d at 494. As to Mr. Moran, we found ample evidence to support the verdict: he had a plain duty to disclose his sharply conflicted financial interests to the bank, and his testimony that he had made the disclosure allowed the jury, based on credibility and demeanor, to disbelieve him and credit Noke's contrary testimony. Id. at 490-91. To buttress that permissible finding, the record supported the conclusion that Mr. Moran

---

[3]In October of 1999, the defendants jointly filed a separate motion for a new trial based on newly discovered evidence (specifically, alleged juror misconduct). That motion was timely. See Fed. R. Crim. P. 33(b)(1). However, the district court denied it on December 27, 1999. On appeal, the defendants do not attempt to challenge that ruling.

intentionally failed to disclose the information in order to gain a financial advantage.  Id. at 491.  "In sum, there was sufficient evidence to allow a rational jury to conclude, beyond a reasonable doubt, that . . . Moran concealed his financial arrangements with Puente and Boersner . . . pursuant to an affirmative endeavor calculated to defraud First American."  Id. at 491-92.

As to Mrs. Moran, we found that although the government's theory that she had voted to ratify or approve the Puente/Boersner loans did not pass muster, see supra note 2, there were other, independently sufficient grounds for upholding the verdict.  Id. at 492.  Specifically, the government had presented adequate evidence to allow a rational jury to conclude that Mrs. Moran, "aware of her husband's outside dealings and arrangements concerning the projects prior to the consummation of the transactions at issue, chose not to disclose the conflicts . . . because she anticipated that a financial windfall would accrue to her husband (and by extension to her) should the loans be approved."  Id.  We also discerned significant evidence that Mrs. Moran had aided and abetted her husband's scheme:  she accompanied her husband on an inspection of the properties before the loan applications were submitted; she created the MDG Trust two days before the bank's executive committee approved the loans; and she named herself as trustee instead of Mr. Moran's secretary (as was their custom).  Id.  We also observed that Mrs. Moran regularly shared financial matters

with her husband and that she was, in her own right, "an astute real estate broker and bank director familiar with the affirmative duties of disclosure." Id. at 492. Taken as a whole, this evidence sufficed for a rational jury to convict Mrs. Moran of both bank fraud and conspiracy. Id. at 493-94. Chief Judge Boudin joined in the reinstatement of the convictions but wrote separately to suggest that the thinness of the evidence against Mrs. Moran probably would support an order granting her a new trial if the district court found that she had timely sought that anodyne. Id. at 495-96 (Boudin, C.J., concurring).

On remand, the Morans moved for a hearing on their outstanding requests to convert their Rule 29 motion into a Rule 33 motion. The government filed an opposition. The district court rebuffed the conversion requests, ruling that the defendants had not seasonably moved for a new trial. The court proceeded to pronounce sentence. These timely appeals followed.

## II. ANALYSIS

We divide our analysis into several discrete segments, corresponding with the variety of the defendants' arguments.

### A. Law of the Case.

We start with Mrs. Moran's explicit beseechment that we revisit and repudiate the prior panel opinion. The government counters that we are without the power to conduct such a review under the law of the case doctrine and that, in all events, the

predecessor panel got it right.  We give each side half a loaf.  On the one hand, we agree with Mrs. Moran that, as a theoretical matter, we have some authority — albeit limited authority — to reexamine our earlier decision.  On the other hand, we agree with the government that the circumstances at hand do not warrant displacing the earlier ruling.

The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." <u>Arizona</u> v. <u>California</u>, 460 U.S. 605, 618 (1983).  The doctrine has two branches.  The first branch — the mandate rule — prevents relitigation in the trial court of matters that were explicitly or implicitly decided by an earlier appellate decision in the same case.  <u>United States</u> v. <u>Vigneau</u>, 337 F.3d 62, 67 (1st Cir. 2003).  The second branch contemplates that a legal decision made at one stage of a criminal or civil proceeding should remain the law of that case throughout the litigation, unless and until the decision is modified or overruled by a higher court.  <u>See</u> <u>Christianson</u> v. <u>Colt Indus. Oper'g Corp.</u>, 486 U.S. 800, 816-17 (1988).  That branch binds, for example, a successor appellate panel in a second appeal in the same case, <u>see</u> <u>Cohen</u> v. <u>Brown Univ.</u>, 101 F.3d 155, 167-68 (1st Cir. 1996), and a successor trial judge who steps in to complete a pending case, <u>see</u> <u>Flibotte</u> v. <u>Pa. Truck Lines, Inc.</u>, 131 F.3d 21, 24-25 (1st Cir. 1997).

We are dealing here with the second branch of the law of the case doctrine. That branch is prudential and, accordingly, is more flexible than the first. We recently catalogued several situations in which a court might appropriately reconsider its past decision. See Ellis v. United States, 313 F.3d 636, 647-48 (1st Cir. 2002). Mrs. Moran asseverates that this case comes within that taxonomy as a case in which "reconsideration may be appropriate to avoid manifest injustice." Id. at 648.

While Ellis recognized this exception — and we reaffirm its vitality — a litigant seeking to fit within its confines must negotiate a steep uphill climb. In this context, a finding of manifest injustice requires, at a bare minimum, "a definite and firm conviction that a prior ruling on a material matter is unreasonable or obviously wrong," and resulted in prejudice. Id. at 648 & n.5. Mrs. Moran cannot scale these heights.

In mounting her argument, Mrs. Moran relies exclusively on Chief Judge Boudin's concurring opinion in Moran I. What she seemingly fails to appreciate is that even the author of that concurrence concluded that there was sufficient evidence upon which to ground a conviction. Moran I, 312 F.3d at 495-96 (Boudin, C.J., concurring). That conclusion is antithetic to Mrs. Moran's claim that the concurrence necessitates (or even supports) a finding that the earlier panel opinion was, in the Ellis phrase, "unreasonable or obviously wrong." Ellis, 313 F.3d at 648. Since Mrs. Moran

-12-

points to no other authority to support such a finding, there is no basis for suspecting manifest injustice here. We therefore decline Mrs. Moran's invitation to disturb the decision in Moran I.

## B. **The Attempted Conversion**.

A motion for a new trial in a federal criminal case, other than a motion alleging newly discovered evidence, must be filed within seven days next following the initial entry of judgment. Fed. R. Crim. P. 33(b)(2). Mr. Moran filed no such motion within the allotted interval. In an endeavor to repair this omission, he asseverates that the defendants' timely motion for judgment of acquittal should have been considered "alternatively" as a motion for new trial and that, therefore, the district court should have converted that Rule 29 motion into a Rule 33 motion for a new trial.[4] This asseveration is hopeless.

The motion to which Mr. Moran alludes was captioned "Motion[] for Judgment of Acquittal and for Additional Time to File Memoranda." The body of the motion reads in relevant part:

> NOW COME defendants John and Nora Moran, through counsel, and pursuant to Rule 29 of the Federal Rules of Criminal Procedure and hereby renew their motions for this Honorable Court to enter a judgment of acquittal as to all counts of the Superseding Indictment. In support thereof, counsel states the following:
>
> . . .

---

[4]Although the Morans jointly filed the motion for judgment of acquittal, Mrs. Moran does not pursue this line of argument.

-13-

6. . . . [T]he government failed to offer sufficient evidence upon which a rational jury could find the Defendants guilty beyond a reasonable doubt of the crimes of bank fraud and conspiracy to commit bank fraud.

7. The government's evidence is equally consistent with guilt as it is with innocence which requires a judgment of acquittal.

8. Assuming _arguendo_ that the government established that the Defendants violated bank policy and/or civil banking regulations, the government failed to introduce any other conduct which may form the basis for a bank fraud conviction.

9. The government has failed to prove intent on the part of the Defendants.

10. Assuming _arguendo_ that the government has proven that the Defendants intended to defraud First American Bank, it failed to prove that their statements or omissions were material.

WHEREFORE, based upon the foregoing arguing [sic] arguments and authorities this Honorable Court is respectfully urged to permit the Defendants additional time to file memoranda in support of the instant motion and to enter a judgment of acquittal as to all counts of the Superseding Indictment.

Mr. Moran suggests that this motion was sufficient to permit a judge to grant him a new trial based on the following syllogism: (i) the substance of a motion, not its title, controls; (ii) a motion pointing out that the government did not have enough evidence to convict a defendant, a priori, supports a claim that the weight of the evidence tipped greatly in the defendant's favor;

-14-

(iii) such a weight-of-the-evidence finding would support the granting of a new trial; and so (iv) a motion seeking judgment of acquittal because of insufficient evidence — like Mr. Moran's motion — "logically" must encompass a request for a new trial.

Taken in the abstract, some of these premises are correct. For example, we have stated that "[i]n addressing a post-judgment motion, a court is not bound by the label that the movant fastens to it" and may "reclassify the motion as its substance suggests." Vasapolli v. Rostoff, 39 F.3d 27, 36 (1st Cir. 1994). So too a timely motion for new trial may be granted when "evidence preponderates heavily against the verdict." United States v. Wilkerson, 251 F.3d 273, 278 (1st Cir. 2001) (internal quotation marks omitted). But two swallows do not a summer make, and Mr. Moran's syllogism falls apart when one analyzes its conclusion: that a motion seeking a judgment of acquittal on sufficiency-of-the-evidence grounds necessarily must be read as requesting a consolation prize in the nature of a new trial.

That reading is neither logically compelled nor legally appropriate. Where the motion papers cannot be fairly construed as a request for a new trial, a district court does not have the authority, sua sponte, to convert a motion for judgment of acquittal into a motion for a new trial. United States v. Navarro Viayra, 365 F.3d 790, 793 (9th Cir. 2004); United States v. Brown, 587 F.2d 187, 189 (5th Cir. 1979). That choice is the defendant's

-15-

— and the defendant's alone. What is more, it must be exercised within the time parameters prescribed by the Criminal Rules.

As said, Fed. R. Crim. P. 33(b)(2) specifies that a motion for new trial, other than a motion grounded on newly discovered evidence, must be filed within seven days of the jury verdict (i.e., the entry of judgment). That rule was amended in 1966 to "make it clear that a judge has no power to order a new trial on his own motion" once judgment has entered. Fed. R. Crim. P. 33 advisory committee notes (1966 Amendments). Simultaneously, the advisory committee made it pellucid that the Criminal Rules forbid an interpretation that would allow a district court, on its own initiative, to evade the temporal strictures of Rule 33 by reading into a Rule 29 motion for judgment of acquittal a request for a new trial, not solicited by the movant. See Fed. R. Crim. P. 29 advisory committee notes (1966 Amendments, Subdivision (c)) (explaining that Rule 29(c) precludes an interpretation that "gives the [district] court power to order a new trial even though the defendant . . . has not asked for one").

Viewed against this backdrop, it is transparently clear that even if a motion for judgment of acquittal contains a substantive basis sufficient to ground the grant of a new trial, a court is without power to treat the motion as a motion for a new trial unless it also contains some overt indication that the movant desires that relief. The motion in this case contained no such

indication.  It invoked Rule 29, not Rule 33, and the only relief requested was an outright acquittal.  It was not until September 15, 1999 — well beyond the seven-day deadline — that Mr. Moran informed the district court of his desire for a new trial.  That was too late.[5]

That disposes of this assignment of error.  The Criminal Rules gave Mr. Moran seven days within which to move for a new trial.  He failed to seek that relief, and his timely motion for judgment of acquittal did not fill the void.  Consequently, the district court acted appropriately both in denying Mr. Moran's belated conversion request and in refusing to grant a new trial.

### C.  <u>Ineffective Assistance of Counsel</u>.

The defendants next claim that the failure of their trial attorneys to file timely new trial motions constitutes ineffective assistance of counsel and, as such, justifies retrial.  This claim, raised for the first time in this venue, is premature.

---

[5]Mr. Moran's citation to <u>United States</u> v. <u>Baker</u>, 432 F.2d 994 (10th Cir. 1970) (per curiam), is of little value.  <u>Baker</u> states, without analysis, that the motion for judgment of acquittal filed by the defendant in that case "should be construed as containing allegations sufficient to constitute a motion for new trial."  <u>Id.</u> at 995.  The court neither described the contents of the motion nor explained what relief the defendant had sought.  To the extent that <u>Baker</u> suggests that a district court can grant a new trial sua sponte after the entry of judgment in a criminal case, without a timely indication from the defendant that he desires one, its holding is flatly inconsistent with the Criminal Rules and, like the Ninth Circuit, <u>see</u> <u>Navarro Viayra</u>, 365 F.3d at 795, we respectfully decline to follow it.

"We have held with a regularity bordering on the monotonous that fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions, but, rather, must originally be presented to, and acted upon by, the trial court." United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993) (collecting cases). This rule is prudential in nature. A claim of ineffective assistance requires a showing that the attorney turned in a constitutionally deficient performance that prejudiced the defendant's substantial rights. See Strickland v. Washington, 466 U.S. 668, 687 (1984); United States v. Martinez-Vargas, 321 F.3d 245, 251 (1st Cir. 2003). Claims of this sort "typically require the resolution of factual issues that cannot efficaciously be addressed in the first instance by an appellate tribunal." Mala, 7 F.3d at 1063. In addition, the insights of the trier, who has seen and heard the witnesses at first hand and watched the dynamics of the trial unfold, are often of great assistance. See, e.g., United States v. Fish, 34 F.3d 488, 494 n.4 (7th Cir. 1994); United States v. McGill, 952 F.2d 16, 19 (1st Cir. 1991).

This is such a case. No ineffective assistance claim surfaced in the district court, and the record is barren of evidence as to why the lawyers did what they did. There are both tactical and strategic reasons why a party might seek a judgment of acquittal but not a new trial (for example, a fear that the

-18-

prosecution will learn from its mistakes and put in a more persuasive case the second time around, a fear that the decisionmaker will take a request for acquittal less seriously if a possible compromise — such as a new trial — is on the table, or a fear that a shift in judges will lead to a stiffer sentence). Although hindsight is always 20/20, we cannot tell from this record whether the decision not to seek a new trial, when made, was a calculated stratagem or a mere oversight.  Factfinding will be required to make that determination, which means that the district court should hear the claim in the first instance.  See, e.g., McGill, 952 F.2d at 19.

We add, moreover, that even if the failure to ask for a new trial betokens objectively unreasonable (and, therefore, constitutionally deficient) performance on the part of the lawyers — a matter on which we take no view — it remains to be determined whether any such failure was prejudicial within the meaning of Strickland.  A finding of prejudice here would require a subsidiary finding that, but for the error, the moving defendant probably would have received a new trial.  See, e.g., Flores v. Demskie, 215 F.3d 293, 305 (2d Cir. 2000).  That question is not open and shut. Each defendant must independently demonstrate that, given the holding of this court in Moran I, an objectively reasonable

district court would likely have granted a new trial.[6]  See Butcher v. United States, 368 F.3d 1290, 1294-95 (11th Cir. 2004); Ouber v. Guarino, 293 F.3d 19, 32-33, 33 n.10 (1st Cir. 2002).  The nisi prius court is the proper forum in which the defendants may attempt to make this showing.

For these reasons, we decline to entertain the ineffective assistance claims here and now.  Instead, we dismiss them without prejudice to their reassertion, should the defendants so choose, in proceedings under 28 U.S.C. § 2255.

### D.  **Miscellaneous Assignments of Error**.

There are two other issues lurking at the periphery of these appeals:  both defendants argue that the district court incorrectly instructed the jury on the bank fraud count and Mrs. Moran urges that the prosecutors' summation misstated both the facts and the law.  Before addressing these issues, we turn to a threshold question:  are these claims of error foreclosed by the defendants' failure, as appellees, to pursue them during the original appeal (Moran I)?

---

[6]The fact that the district court originally granted the defendants' motion for judgment of acquittal is not an infallible harbinger of how motions for new trial would fare.  The district court's judgment, informed by the opinion in Moran I, may well be different.  In any event, no less an authority than the Supreme Court has stated that in the ineffective assistance context, "the idiosyncracies of the particular decisionmaker . . . are irrelevant to the prejudice inquiry."  Strickland, 466 U.S. at 695.

1. **Preclusion**. We begin our discussion on a cautionary note: the government did not make a preclusion argument in its main appellate brief, but, rather, frontally addressed the substance of the Morans' assignments of error. We recognized the possibility of preclusion during oral argument and requested supplemental briefing on the point. The government, in its supplemental brief, has argued for preclusion — but its failure to raise the preclusion issue in a timely manner is reason enough to deem it waived. See United States v. Rodriguez-Marrero, ___ F.3d ___, ___ (1st Cir. 2004) [No. 01-1647, slip op. at 32]; United States v. Caraballo-Cruz, 52 F.3d 390, 393 (1st Cir. 1995).

To be sure, we have discretion, in the interests of justice, to overlook this kind of waiver — a lack of developed argumentation — by the government in a criminal case. See, e.g., United States v. Rose, 104 F.3d 1408, 1414 (1st Cir. 1997). Even were we prone to exercise that discretion here, it would not profit the government. We explain briefly.

In general, available claims of error not raised in an initial appeal may not be raised during subsequent appeals in the same case. See United States v. Abreu-Cabrera, 94 F.3d 47, 49 (2d Cir. 1996) (explaining that "appellate courts will refuse to consider trial court rulings that could have been raised on an earlier appeal"); see also United States v. Ticchiarelli, 171 F.3d 24, 28-29 (1st Cir. 1999). Here, however, the Morans were

<u>appellees</u> during the first appeal. That juxtaposition may make a material difference where, as here, the judgment from which an appeal is taken is entirely favorable to the appellee and that party, after losing the appeal, then seeks to raise a new issue during a later appeal of an unfavorable judgment. <u>See</u>, <u>e.g.</u>, <u>Laitram Corp.</u> v. <u>NEC Corp.</u>, 115 F.3d 947, 954 (Fed. Cir. 1997); <u>Crocker</u> v. <u>Piedmont Aviation, Inc.</u>, 49 F.3d 735, 740-41 (D.C. Cir. 1995). Absent a cross-appeal, an appellee can only raise arguments in support of the judgment during the course of an appeal. <u>United States</u> v. <u>Am. Ry. Express Co.</u>, 265 U.S. 425, 435-36 (1924); <u>Martin</u> v. <u>Tango's Restaurant, Inc.</u>, 969 F.2d 1319, 1325 (1st Cir. 1992). A cross-appeal normally is improper when taken by a defendant from a favorable judgment, <u>Field</u> v. <u>Mans</u>, 157 F.3d 35, 41 (1st Cir. 1998), and arguably impermissible when taken by a defendant from a judgment of acquittal in a criminal case. <u>See</u> <u>United States</u> v. <u>Boyd</u>, 958 F.2d 247, 250 (8th Cir. 1992); <u>United States</u> v. <u>Williams</u>, 679 F.2d 504, 507 (5th Cir. 1982).

Given these authorities, we need not decide definitively whether a cross-appeal might have been permitted in connection with the government's earlier appeal of the judgments of acquittal. When an appellee fails to contest a point that is irrelevant unless the main appeal results in reversal or remand, this court, even if a cross-appeal theoretically might have been possible, has been reluctant to find preclusion. <u>See</u> <u>Field</u>, 157 F.3d at 41-42

-22-

(abjuring preclusion based solely on a failure to file a "procedurally dubious cross-appeal" relating to what "might [originally] have seemed an entirely redundant point").

Let us be perfectly clear. There are times when even an appellee who is defending an entirely favorable judgment must either raise an error purportedly committed by the district court or waive it. Typically, however, this occurs when correction of the error would provide either an alternate or an additional basis for affirmance of a favorable judgment. See, e.g., Schering Corp. v. Ill. Antibiotics Co., 89 F.3d 357, 358-59 (7th Cir. 1996). That is not the situation here: the defendants' newly asserted assignments of error — an ostensible flaw in the jury instructions and allegations of prosecutorial misconduct — are claims of legal error which, if sustained, would lead only to a retrial, not to an acquittal. Thus, even apart from the government's waiver, we would likely deem the defendants free to raise the assigned errors for the first time in this proceeding.

2. **Jury Instructions**. We turn next to the jury instructions. The defendants contend that the district court improperly charged the jury on the elements of bank fraud. We examine that contention.

The federal bank fraud statute provides in pertinent part:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—

-23-

(1) to defraud a financial
institution; or

(2) to obtain any of the
moneys, funds, credits, assets,
securities, or other property
owned by, or under the custody
or control of, a financial
institution, by means of false
or fraudulent pretenses,
representations, or promises;

shall be [punished as provided].

18 U.S.C. § 1344.  The Supreme Court has glossed this language,
stating that any scheme to defraud a financial institution must
"employ material falsehoods."  Neder v. United States, 527 U.S. 1,
20 (1999) (emphasis omitted).

In this case, the lower court instructed the jury,
without objection, that it could base a guilty verdict on either
subsection (1) or (2), and then explicated each subsection.  With
regard to section 1344(1), the court defined a scheme to defraud
without specifying that the prevarications embodied in the scheme
had to be materially false.  The court did, however, indicate the
necessity of finding material falsehood with regard to section
1344(2)'s "obtaining money by false pretenses" prong.

During oral argument in this court, the government
conceded that the district court's section 1344(1) instruction was
erroneous for this reason.  See United States v. Benjamin, 252 F.3d
1, 6 (1st Cir. 2001); United States v. Colon-Munoz, 192 F.3d 210,
221 (1st Cir. 1999).  It pointed out, however, that neither of the

-24-

defendants had objected to the instruction during the time frame specified in Fed. R. Crim. P. 30(d) (requiring that objections to jury instructions be made after the judge has charged the jury, but before the jury retires to deliberate).[7]   Under these circumstances, our review is limited to plain error.  See Fed. R. Crim. P. 30(d), 52(b); see also United States v. Olano, 507 U.S. 725, 731-32 (1993).

A party undertaking the rigors of plain error review must carry a heavy burden.  Under that regime, an appealing defendant must demonstrate:  "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).  Even then, the reviewing court may, but is not required to, rectify the situation.  Olano, 507 U.S. at 735-36.  The net result is that plain error review tends to afford relief to appellants only for

---

[7]Mrs. Moran tries to talk around the problem, insisting that her attorney quibbled with the trial court as to the materiality instruction during the pre-charge conference.  Such a pre-charge colloquy is insufficient to satisfy the requirements of Rule 30(d).  See United States v. Coady, 809 F.2d 119, 123 (1st Cir. 1987) (stating that though "counsel may have discoursed upon the nature of his theory at some time prior to the giving of the charge," that circumstance "will not excuse noncompliance with the express mandates of Rule 30"); see also United States v. Arthurs, 73 F.3d 444, 448 (1st Cir. 1996).

"blockbuster[]" errors.  <u>United States</u> v. <u>Griffin</u>, 818 F.2d 97, 100 (1st Cir. 1987).

In this instance, the first two prongs of the test are satisfied.  The defendants stumble, however, over the third prong.  The assigned error did not affect their substantial rights:  the defendants do not and cannot show that the inclusion of an additional materiality instruction had any effect at all on the trial or its outcome.

"Materiality" requires only that a false or omitted statement have "a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed."  <u>Neder</u>, 527 U.S. at 16 (brackets and internal quotation marks omitted).  This court already has noted that the materiality of the falsehoods inherent in the defendants' scheme to defraud was evident.  <u>See</u> <u>Moran I</u>, 312 F.3d at 491 & n.13 (concluding that the bank might well have acted differently had it known of the defendants' interests); <u>see</u> <u>also</u> <u>id.</u> at 496 (Boudin, C.J., concurring) (finding "unpersuasive" Mrs. Moran's non-materiality argument).  On the basis of this record, there is simply no justification for upsetting the verdict on this ground.  <u>See</u> <u>Neder</u>, 527 U.S. at 19-20 (holding failure to instruct on materiality harmless when record contains no "evidence that could rationally lead" to a contrary finding); <u>United States</u> v. <u>Blastos</u>, 258 F.3d 25, 29 (1st Cir. 2001) (same).

**3. The Summation**. The prosecution's closing argument was given by two individuals and in two parts, bracketing the defendants' summations. Mrs. Moran asserts that this bifurcated closing argument so tainted the trial as to deny her due process. This assertion rests on four separate statements attributable to members of the prosecution team.

Mrs. Moran maintains that the first two statements misstated the facts. During the initial phase of his summation, one prosecutor said:

> If you go to Exhibit number 43, minutes of the Board of Directors, January of '87, Nora Moran is present. It talks about how the activities of the Executive Committee are brought up for presentation and the summarization by Mr. Murray. There was testimony they would be summarized, the individual loans might be talked about, they would be brought forth for review and approval. And the records affirmatively show Nora Moran was there that day. She voted in favor of the loan, her loan, involving Puente and Boersner and their finances and made no dissent, no abstention, no disclosure.

Another prosecutor made essentially the same comment during the rebuttal phase of the summation. We treat these two statements together. Inasmuch as the defense did not interpose a contemporaneous objection on either occasion, we review only for plain error. See Griffin, 818 F.2d at 99-100.

We discern no plain error. The evidence supported a reasonable inference that First American's board of directors voted on the Puente/Boersner loans. The evidence showed that the

-27-

executive committee approved the loans in December; that the committee's custom and practice was to transmit a complete list of its approved loans to the board; that the board typically would consider, and vote on, the approved loans at the next month's board meeting; and that Mrs. Moran attended that meeting (held in January of 1987). No more was exigible to allow the argument to be proffered.

Mrs. Moran suggests that these statements were improper based on the observations subsequently made by the district court in support of its entry of judgment of acquittal. In that decision, the court opined that, even had Mrs. Moran voted on the Puente/Boersner loans, the most that could be said was that she had voted to accept a summary report rather than to ratify or approve those particular loans (as the bank, by the time of the vote, already had committed, and largely disbursed, the funds).

Mrs. Moran's suggestion is a non-sequitur. At the close of the evidence, the court allowed the case to go to the jury on a primary theory of liability having two strains — a voting theory and a non-disclosure theory — and a less prominent aiding and abetting theory. Moran I, 312 F.3d at 492 & n.14. This court found the voting theory insufficiently proven, but found the evidence adequate to support the verdict on both the non-disclosure theory and the aiding and abetting theory. Id. at 492-93. Given this posture of the case, Mrs. Moran's challenge lacks bite.

It is common ground that when "disjunctive theories are submitted to the jury and the jury renders a general verdict of guilty . . . as long as there was sufficient evidence to support one of the theories presented, then the verdict should be affirmed."  United States v. Garcia, 992 F.2d 409, 416 (2d Cir. 1993) (citing Griffin v. United States, 502 U.S. 46, 49-51, 55-60 (1991)).  If it does not offend due process to affirm a conviction even though one of several charged theories of guilt had an insufficient evidentiary predicate, see Griffin, 502 U.S. at 51; United States v. Nieves-Burgos, 62 F.3d 431, 434-36 (1st Cir. 1995), a fortiori, mere argument in support of that insufficient theory, fairly derived from the record, cannot violate due process. To hold otherwise would eviscerate the Griffin doctrine.

Mrs. Moran fares no better on the other aspect of her prosecutorial misconduct claim.  This involves her insistence that the prosecutors twice misstated the law (once during the initial phase of the summation and again during the rebuttal phase) when it was said, in effect, that Mr. Moran could not make any legally exculpatory disclosures on behalf of his wife.  Here, too, neither statement drew a contemporaneous objection, so appellate review is limited to plain error.  See Griffin, 818 F.2d at 99-100.

In order to prevail under the four-part plain error regime, see Duarte, 246 F.3d at 60, Mrs. Moran's first obligation

is to show that the prosecutors' statements were legally flawed. She has failed to make that showing.

As said, there were three routes to finding that Mrs. Moran possessed the scienter necessary to have committed bank fraud. The voting theory implicated banking regulations, uniquely applicable to Mrs. Moran in her capacity as a director of the bank, which required her to inform her fellow directors about any loans in which she had a financial interest and to disqualify herself from voting on them. The non-disclosure theory implicated Mrs. Moran's duty, as the bank's fiduciary, to report her husband's double-dealing. The aiding and abetting theory implicated her knowing assistance to her husband's fraud. Under the latter two theories, Mrs. Moran's criminal intent was premised on knowledge that her husband had breached <u>his</u> ethical duties to the bank. This was what attracted Chief Judge Boudin's concern. <u>See</u> <u>Moran I</u>, 312 F.3d at 494-95 (Boudin, C.J., concurring).

This segmentation is critical to our disposition of this aspect of Mrs. Moran's prosecutorial misconduct claim, for the context of the challenged statements makes it clear that they referred to her personal obligation under the voting theory. The prosecutor was arguing, in effect, that Mrs. Moran's obligation to the board of directors could not be deemed satisfied by her husband's alleged disclosure to Noke. This argument restated competent testimony that such a disclosure was insufficient because

Noke was a subordinate employee of the bank, not a fellow director. Viewed in this light, the challenged statements can be read as positing that even if Mr. Moran had fulfilled his ethical duty, Mrs. Moran knew that she had an independent, supervening duty to First American's board and nonetheless voted on the loans with full awareness that she had not satisfied that duty. We believe that was within the ambit of permissible advocacy.

The worst that can be said is that this strain of argument was ambiguous; it was legally accurate as to one of the prosecution's theories of guilt, arguably inaccurate as to the others, and did not clearly differentiate among them. But context is important, and both times the prosecutor made the challenged statement, it served as the starting point of a discussion of the voting theory. We do "not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." United States v. Lilly, 983 F.2d 300, 307 (1st Cir. 1992) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974)). We make no such inference here. Considering the context of the statements and the fact that no contemporaneous objection was lodged, we must give the prosecutor the benefit of the doubt. See United States v. Taylor, 54 F.3d 967, 979 (1st Cir. 1995); Lilly, 983 F.2d at 307.

If more were needed — and we doubt that it is — we are satisfied that the judge's charge dispelled any possible confusion. The charge clearly differentiated among the government's three theories. It identified how the regulatory duties of Mrs. Moran, as a director, differed from the general fiduciary duties owed by both defendants, and limned the contours of the aiding and abetting theory. To cinch matters, the court explicitly instructed that "if what [the attorneys] have said about the law seems to . . . have a different meaning in any way from my instructions on the law, you must be guided only by my instructions." Under these circumstances, we are confident that any prejudice stemming from the challenged statements did not survive the court's charge. There was, therefore, no plain error. See Taylor, 54 F.3d at 977.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, we affirm the convictions and sentences of both defendants. In so doing, however, we do not adjudicate the merits of the defendants' ineffective assistance of counsel claims. Those claims are dismissed without prejudice and may be resurrected, should either or both of the defendants so elect, in post-conviction proceedings under 22 U.S.C. § 2255. See Mala, 7 F.3d at 1064.


**Affirmed**.