# United States Court of Appeals
## For the First Circuit

No. 08-2122

NULANKEYUTMONEN NKIHTAQMIKON; DAVID MOSES BRIDGES; VERA FRANCIS; HILDA LEWIS; DEANNA FRANCIS; REGINALD JOSEPH STANLEY; and MARY BASSETT,

Plaintiffs, Appellants,

v.

ROBERT K. IMPSON, Acting Regional Director, Eastern Region, Bureau of Indian Affairs; and KEN SALAZAR,[*] Secretary, United States Department of the Interior,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before
Torruella, Ripple,[**] and Boudin,
Circuit Judges.

Teresa B. Clemmer, Environmental and Natural Resources Law Clinic, Vermont Law School, with whom David K. Mears, Environmental and Natural Resources Law Clinic, Vermont Law School, was on brief for appellants.

John L. Smeltzer, Department of Justice, Environment & Natural Resources Division, with whom John C. Cruden, Acting Assistant Attorney General, Sara E. Costello, M. Alice Thurston, Department of Justice, Environment & Natural Resources Division, and John Harrington, Assistant Regional Solicitor, Department of the

---

[*]Pursuant to Fed. R. App. P 43(c)(2), Secretary of the Department of the Interior Ken Salazar has been substituted for former Secretary Gale Norton as defendant, appellee.

[**]Of the Seventh Circuit, sitting by designation.

Interior, Office of the Solicitor, were on brief for appellees.

---

October 28, 2009

---

BOUDIN, **Circuit Judge**. This appeal is the second in continuing litigation by a group of members of the Passamaquoddy Tribe called Nulankeyutmonen Nkihtaqmikon--the phrase means "We Protect the Homeland," and we refer to the group as NN--to challenge a Bureau of Indian Affairs ("BIA") decision; the decision approved a lease of a plot of Passamaquoddy land for the construction and operation of a liquefied natural gas ("LNG") facility, contingent on federal regulatory approval being obtained from the Federal Energy Regulatory Commission ("FERC"). The relevant facts, which have been discussed in previous decisions,[1] are as follows.

In May 2005, the tribal authorities in charge of the Pleasant Point reservation agreed to a lease with Quoddy Bay, LLC ("Quoddy Bay"), that would allow Quoddy Bay to construct a LNG facility on a 3/4 acre portion of the tribe's land known as Split Rock. The lease contemplates four phases: permitting, construction, operations, and removal and remediation. In the first "permitting" phase, Quoddy Bay is entitled to test and survey the land as needed to obtain FERC approval for construction, and the latter phases, if the project moves ahead, allow for construction and operation of the LNG facility. Absent FERC

    [1]Nulankeyutmonen Nkihtaqmikon v. Impson ("NN I"), 462 F. Supp. 2d 86, 91-93 (D. Me. 2006); Nulankeyutmonen Nkihtaqmikon v. Impson ("NN II"), 503 F.3d 18, 23-25 (1st Cir. 2007); Nulankeyutmonen Nkihtaqmikon v. Impson ("NN III"), 573 F. Supp. 2d 311, 314-15 (D. Me. 2008).

approval, the project cannot proceed and the lease can be terminated by the Tribe.

The lease was submitted to the BIA for approval in May 2005 under the Indian Long-Term Leasing Act ("Leasing Act"), 25 U.S.C. § 415 (2006), and the BIA approved it approximately one week later, on June 1, 2005. The BIA did not prepare an environmental impact statement, consult with other agencies or conduct other inquiries before approving the lease. It said, however, that its lease approval allowed only site investigation and that anything more would require approval by FERC, see 15 U.S.C. § 717b(e)(1); the more thorough analyses required by the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq., and other statutes would be part of that approval process.[2] The BIA stated that

> lease approval is solely for the site investigation required for the [FERC] permitting process in the development of [the required environmental assessment ("EIS")] . . . . Continuing the lease beyond the investigation period is contingent upon FERC permit approval, acceptability of the EIS

---

[2]NEPA requires federal agencies to assess the potential environmental consequences of actions that might detrimentally affect "the quality of the human environment." 42 U.S.C. § 4332(2)(C), but environmental impact statements are not required, for "categor[ies] of actions which do not . . . have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency in implementation of these regulations." 40 C.F.R. § 1508.4 (2009). The BIA adopted regulations implementing this exception in 1988, see National Environmental Policy Act; Revised Implementing Procedures, 53 Fed. Reg. 10439 (Mar. 31, 1988), and found that the lease was exempted because it was, at least in its current stage, intended primarily for data gathering.

-4-

analysis and insignificant impact on the leased property.

Seeking to forestall the surveying and testing, NN filed suit in November 2005: it alleged that the BIA approved the lease in violation of NEPA, the National Historic Preservation Act, 16 U.S.C. § 470 et seq., the Leasing Act, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, by failing to conduct environmental reviews; consider the historical, religious, and cultural significance of the leased land; prepare a fair market appraisal; and provide an opportunity for public comment. NN later sued to enjoin the lease under a citizen-suit provision of the Endangered Species Act, 16 U.S.C. § 1540(g), and the two actions were consolidated.

The BIA moved to dismiss on multiple grounds: that what it described as preliminary approval was not "final" agency action, that NN lacked standing, and that the case was not yet ripe for judicial review. The district court agreed, NN I, 462 F. Supp. 2d at 112, but on appeal, the BIA conceded that its lease approval was technically final, albeit no construction or operation could be undertaken without FERC approval, NN II, 503 F.3d at 26. Still, the BIA argued that the law suit was premature because NN had not exhausted administrative review within the Interior Department available under its regulations. See 25 C.F.R. §§ 2.4(e), 2.6; 43 C.F.R. § 4.331.

Rejecting other BIA objections (standing, ripeness), this court held that exhaustion of agency remedies was "mandatory" under governing precedent, subject only to the possibility that one of the established exceptions to the exhaustion requirement applied. NN II, 503 F.3d at 33-34. The court then remanded the case to the district court with instructions to "consider whether [NN] merit[s] an exception to the exhaustion requirement." Id. at 34. Back in the district court, NN preserved its administrative remedies,[3] and then, instead of arguing any "exception" excused its failure to exhaust, told the district court that this court had erred by imposing the exhaustion requirement in the first place.

The district court replied that this court had declared exhaustion "mandatory" unless an exception applied, and it found no exception applicable: the exceptions mooted but rejected by the district court were those based on exceptional circumstances, see White Mountain Apache Tribe v. Hodel, 840 F.2d 675, 677 (9th Cir. 1988), and on equitable considerations like waiver or estoppel, see Frederique-Alexandre v. Dep't of Natural and Envtl. Res., 478 F.3d 433, 440 (1st Cir. 2007). Accordingly, the district court dismissed the case--leaving NN to pursue its internal Interior Department appeals before resuming (if necessary) litigation in the district court. NN III, 573 F. Supp. 2d at 314, 318.

_____

[3]NN filed a protective administrative appeal with the Interior Board of Indian Appeals, which was stayed by stipulation during the remand proceedings in the district court and in this court.

On this second appeal, NN does not argue that any exception to the exhaustion requirement applies; instead it takes issue, as it did in the district court, with our earlier decision that exhaustion was mandatory unless an exception applied. Yet the remand order was quite clear that exhaustion was required unless excused, see NN II, 503 F.3d at 33-34, and any request that it be reconsidered should have been made by a timely petition for rehearing in this court, see United States v. DeJesus, 752 F.2d 640, 643 (1st Cir. 1985); when our mandate issued, it established the law of the case. United States v. Moran, 393 F.3d 1, 7 (1st Cir. 2004).

We could revisit our own earlier decision if NN could "show that controlling legal authority has changed dramatically;" "proffer significant new evidence, not earlier obtainable in the exercise of due diligence;" or "convince the court that a blatant error in the prior decision will, if uncorrected, result in a serious injustice." United States v. Bell, 988 F.2d 247, 251 (1st Cir. 1993); see also United States v. Rivera-Martinez, 931 F.2d 148, 151 (1st Cir. 1991), cert. denied 502 U.S. 862 (2006). Only the third ground is even arguably relevant here: for the sake of future litigation, we describe briefly NN's claim that error occurred, but we resolve the appeal against NN solely on the ground that no serious injustice is threatened by leaving the mandate undisturbed.

NN's main argument against our prior decision is that unless a statute requires exhaustion, judicial review of agency action under the APA, applicable where no other statutory channel of review is provided, does not require exhaustion unless there is both internal agency review available and the final agency action is rendered inoperative during such review. See 5 U.S.C. § 704; Darby v. Cisneros, 509 U.S. 137, 154 (1993). Most of the statutes invoked by NN in this case as the basis for attacking the BIA decision are subject to APA review; the Endangered Species Act alone provides its own statutory channel of review.

The BIA says that its decision was and is presently inoperative. This assertion turns on the BIA's contention that its earlier lease approval did not become operative under BIA regulations, so requiring exhaustion accords with section 704's conditions and with Darby. An agency decision can be completed but ineffective pending further review at a higher agency level or in court, cf. Idaho Watersheds Project v. Hahn, 307 F.3d 815, 825-27 (9th Cir. 2002); but to so describe the lease approval in this case is admittedly at odds with the BIA's earlier claim, on the first appeal to this court, that "the lease became effective and binding on the date it was signed." The BIA admits this change of position to be so but says that it previously overlooked a peculiarity of this case.

-8-

The BIA now points to a regulation stating that a BIA decision becomes "effective" only when (1) the time for filing a notice of appeal has expired and no such appeal has been filed, (2) the BIA specifically makes a decision effective immediately or (3) the appellate agency review board renders a final decision. See 25 C.F.R. § 2.6; 43 C.F.R. § 4.337(a). The time for filing an appeal is ordinarily 30 days, 25 C.F.R. § 2.7(c), but, says the BIA, notice of the decision was not initially provided to NN (since it was not a party to the lease), NN's appeal rights did not expire, and the lease is now inoperative until the pending administrative appeal is resolved. 25 C.F.R. § 2.7.[4]

NN objects to the agency's change of its position, but the change of position is not automatically barred if it is made in good faith and without causing unfair prejudice, see InterGen N.V. v. Grina, 344 F.3d 134, 144-45 (1st Cir. 2003); Patriot Cinemas, Inc. v. General Cinemas Corp., 834 F.2d 208, 212 (1st Cir. 1987), and the BIA is now committed to affording NN internal agency review. What is more arresting is NN's claim that despite the supposedly ineffective lease, surveying is currently underway and the tribe is collecting lease payments. But it is not certain that

---

[4]The BIA regulation states that the agency's failure to provide notice "shall not affect the validity of the [challenged] decision or action but the time to file a notice of appeal regarding such a decision shall not begin to run until notice has been given." 25 C.F.R. § 2.7(b)(emphasis added). Asked what limit applies absent agency notice, the BIA responded in oral argument that laches is the only limit on delayed attacks.

any lease approval, effective or otherwise, is legally required for either the surveying or the payments, see 25 C.F.R. § 162.103(b); and as to these steps, the Tribe and the company may be proceeding at their own risk

In all events, we need not decide the merits of these arguments as to the need for exhaustion of administrative remedies. NN could have presented its APA and Darby argument in its first appeal; it did not do so, and its request for relief from the mandate rule requires a showing of both blatant error and the threat of serious injustice if we adhere to the mandate. Blatant error has not been demonstrated and there is no showing that exhaustion of the internal remedies will cause any significant harm, let alone serious injustice; when pressed on the issue, NN was unable to point to any concrete harm so long as no operation or construction is allowed without FERC approval.

The same lack of blatant error or harm amounting to an injustice is true as to NN's claim that exhaustion is not a requirement for judicial review of claims under the Endangered Species Act. NN has one circuit precedent on its side, Wash. Toxics Coalition v. EPA, 413 F.3d 1024, 1033-34 (9th Cir. 2005), cert. denied 546 U.S. 1090 (2006), and a few district court cases, while the BIA has some policy arguments in its favor. But, once again, this argument could have been made on the first appeal and the attack is foreclosed by our mandate unless our earlier decision

was plainly wrong and following it would cause a serious injustice. Neither condition has been satisfied.

NN has recently filed a document calling attention to new developments with respect to the lease and its IBIA appeal. NN advises that since the appeal was filed, Quoddy Bay's FERC permit application has been delayed; the tribe has attempted to terminate the lease--an action that Quoddy Bay contests; and the BIA proposes to consider whether the lease may be cancelled if the IBIA agrees to remand NN's administrative appeal. None of these developments affects our analysis in the present appeal.

The district court's judgment is <u>affirmed</u>. Each side will bear its own costs on the appeal.

<u>It is so ordered.</u>