# United States Court of Appeals
## For the First Circuit

No. 17-2214

MS. S., individually and
as parent and legal guardian of B.S., a minor,

Plaintiff, Appellee,

v.

REGIONAL SCHOOL UNIT 72,

Defendant, Appellant,

MAINE DEPARTMENT OF EDUCATION,

Defendant.

No. 18-1004

MS. S., individually and
as parent and legal guardian of B.S., a minor,

Plaintiff, Appellee,

v.

MAINE DEPARTMENT OF EDUCATION,

Defendant, Appellant,

REGIONAL SCHOOL UNIT 72,

Defendant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Jon D. Levy, U.S. District Judge]

Before

Lynch, Selya, and Lipez,
<u>Circuit Judges</u>.

———————————

Eric R. Herlan, with whom Drummond Woodsum & MacMahon were on brief, for appellant, Regional School Unit 72.
Sarah A. Forster, Assistant Attorney General, with whom Thomas A. Knowlton, Assistant Attorney General, Of Counsel, and Phyllis Gardiner, Assistant Attorney General, were on brief, for appellant, Maine Department of Education.
Richard L. O'Meara, with whom Murray, Plumb & Murray was on brief, for appellee.

———————————

February 15, 2019

———————————

**LYNCH**, **Circuit Judge**.  These appeals stem from a complaint filed by Ms. S. with the Maine Department of Education ("MDOE") in May 2013 alleging violations of the Individuals with Disabilities Education Act ("IDEA").  The state due process hearing officer dismissed as untimely Ms. S.'s claims about her son B.S.'s education in school years 2009-2010 and 2010-2011 and found no violations as to school years 2011-2012 and 2012-2013.

In this second decision from this court, we hold that Maine has established a two-year statute of limitations for due process complaints and that it has done so to align its statute of limitations with the IDEA's.  Ms. S.'s claims about 2009-2010 and 2010-2011 are thus time barred.  More specifically, we reverse the district court's ruling that our earlier decision in Ms. S. v. Regional School Unit 72 (Ms. S. I), 829 F.3d 95 (1st Cir. 2016), foreclosed this interpretation of Maine's Unified Special Education Regulation ("MUSER"), as well as the district court's judgment that Ms. S.'s claims were timely.  See MS. S. v. Reg'l Sch. Unit 72, No. 2:13-CV-453-JDL, 2017 WL 5565206, at *7-11 (D. Me. Nov. 20, 2017).  And we reject Ms. S's proposed construction of MUSER, her waiver argument, and her contention that Regional School Unit 72 ("RSU 72") misled her.  We remand with instructions to dismiss her action with prejudice.

I.

A.   Legal Background

   1.   The IDEA

The IDEA requires states receiving federal special education funds to provide eligible children with a free appropriate public education, or FAPE.  20 U.S.C. § 1412(a)(1). Parents concerned that their child is not receiving a FAPE can request a due process hearing before a "State educational agency" in accordance with procedures "determined by State law or by the State educational agency."  Id. § 1415(f)(1)(A).  State procedures must be consistent with the IDEA's guidelines, which are laid out at 20 U.S.C. § 1415.  See Burlington v. Dep't of Educ. for the Comm. of Mass., 736 F.2d 773, 783-85 (1st Cir. 1984).

Section 1415 did not initially include a statute of limitations, but when Congress reauthorized the IDEA in 2004, it addressed the timeline for due process hearings in three provisions.  First, at § 1415(b)(6)(B), in a subsection covering various "[t]ypes of procedures," the IDEA states that a party may file a complaint that:

> sets forth an alleged violation that occurred not more than 2 years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for presenting such a complaint under this subchapter, in such time as the State law allows, except that the exceptions to the timeline described in subsection (f)(3)(D) shall apply to the timeline described in this subparagraph.

20 U.S.C. § 1415(b)(6)(B) (emphasis added).

Second, § 1415 describes due process hearings with particularity, at § 1415 (f). Section 1415(f)(3)(C) provides:

> A parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for requesting such a hearing under this subchapter, in such time as the State law allows.

Id. § 1415(f)(3)(C) (emphasis added).

Third, the statute outlines the "[e]xceptions to the timeline" referenced at § 1415(b)(6)(B). One exception applies where "the parent was prevented from requesting the hearing due to . . . specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the complaint." Id. § 1415(f)(3)(D).

In 2015, the Third Circuit held in G.L. v. Ligonier Valley School District Authority, 802 F.3d 601, 604-05 (3d Cir. 2015), that "§ 1415(b)(6)(B) is simply an inartful attempt to mirror § 1415(f)(3)(C)'s two-year statute of limitations." In 2017, the Ninth Circuit concluded the same. See Avila v. Spokane Sch. Dist. 81, 852 F.3d 936, 937 (9th Cir. 2017).

2. MUSER

In 2007, Maine enacted a state-specific time limitation, which is provided in MUSER. MUSER mirrors the language of the

- 5 -

IDEA.  First, MUSER § XVI.5.A(2) tracks the language of 20 U.S.C. § 1415(b)(6)(B) and states:

> The due process hearing request must allege a violation that occurred <u>not more than two years before the date</u> the parent . . . knew or should have known about the alleged action that forms the basis of the due process hearing request.

Me. Code R. 05-071, Ch. 101 ("MUSER") § XVI.5.A(2) (emphasis added).  Second, MUSER § XVI.13.E tracks the language of 20 U.S.C. § 1415(f)(3)(C) and reads:

> A parent . . . must request an impartial hearing on their due process hearing request <u>within two years of the date</u> the parent or agency knew or should have known about the alleged action that forms the basis of the due process hearing request.

<u>Id.</u> § XVI.13.E (emphasis added).  Third, at § XVI.13.F, MUSER describes the "[e]xceptions to the timeline" provided at § 1415(f)(3)(D) of the IDEA.  <u>Id.</u> § XVI.13.F.

B.  <u>Procedural Background</u>

Our decision in <u>Ms. S. I</u> offers background on B.S.'s education.  <u>See</u> 829 F.3d at 100-02.  Here, we give the relevant procedural facts.

Ms. S. filed a due process hearing request in May 2013 alleging that B.S. had not received a FAPE in his four years of high school, from 2009 through 2013.  The Maine hearing officer dismissed as untimely the claims about B.S.'s ninth and tenth grade years because they had been filed more than two years after Ms. S.

- 6 -

knew or should have known of any IDEA violations. On B.S.'s eleventh and twelfth grade years, the hearing officer determined that B.S. had received a FAPE, except during a short period when he was between schools.

Ms. S. sought judicial review in federal district court. She did not contest that the ninth and tenth grade claims had been filed more than two years after the reasonable discovery date. Instead, she challenged MUSER's two-year statute of limitations as invalid under the Maine Administrative Procedure Act ("MAPA"). The time periods at MUSER §§ XVI.5.A(2) and XVI.13.E had been changed from four to two years in a 2010 rulemaking. Ms. S. alleged that procedural errors during that rulemaking invalidated the change in the time period at § XVI.13.E. About § XVI.5.A(2), she argued not that the change was invalid but that it was irrelevant: § XVI.5.A(2), she said, established not a statute of limitations but a separate "look-back term" restricting relief to violations that occurred up to two years before the reasonable discovery date.

The district court ruled that the revision of the statute of limitations to two years was valid and that Ms. S. could not bring her claims about B.S.'s ninth and tenth grade years under the specific misrepresentation exception. The district court also agreed with the hearing officer's FAPE determination. Ms. S.

appealed. The school district, as appellee, defended against her claims of error.

Our first decision in Ms. S. I affirmed the district court's FAPE judgment. 829 F.3d at 113-15. The decision vacated and remanded on the timing issue after finding errors in the district court's application of MAPA. Id. at 100. Ms. S. I did not rule on the statute of limitations issue. Holding that the record was "insufficient," we remanded to the district court for further factfinding and reevaluation. Id.

On remand, the district court immediately granted MDOE leave to intervene, limited to the issue of whether MUSER had a valid two-year statute of limitations.[1] MDOE was ordered to "compile a record of relevant administrative and legislative proceedings," and it later submitted over 500 pages of materials. In her briefing, Ms. S. maintained that the change at § XVI.13.E was void under MAPA. MDOE and RSU 72 offered a reworking of their view of the legal framework: the two MUSER provisions, they argued, mirror the IDEA and, like that statute, establish a single statute of limitations, not a statute of limitations and a "look-back term." Rejecting MDOE and RSU 72's reading as foreclosed by Ms. S. I, the district court agreed with Ms. S.'s MAPA arguments and

---

[1] The district court rejected MDOE's request to intervene on a second question: whether B.S. had received a FAPE in ninth and tenth grades.

- 8 -

held that her claims were timely.  RSU 72 and MDOE both appealed to this court.

## II.

We address two threshold arguments before turning to the timing limitations question.

### A.  Law of the Case

"The law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"  United States v. Moran, 393 F.3d 1, 7 (1st Cir. 2004) (quoting Arizona v. California, 460 U.S. 605, 618 (1983), supplemented by 466 U.S. 144 (1984)).  One form of the doctrine, known as the mandate rule, prohibits a trial court from reopening issues decided by an earlier appellate ruling in the same case.  Id.  According to the district court, Ms. S. I "viewed the MUSER Look-Back Term and Filing Limitation rules as separate, 'unambiguous' provisions."  Ms. S., 2017 WL 5565206, at *6.  That "construction of the MUSER rules in this case, as the law of the case, is controlling," the district court held.  Id. at *7.  The application of the law of the case doctrine is a question of law, which we review de novo.  Buntin v. City of Boston, 857 F.3d 69, 72 (1st Cir. 2017).

Another form of the doctrine binds successor appellate panels to holdings of earlier appellate panels.  Id.  This branch of the doctrine is "flexible," and has its exceptions.  Ellis v.

United States, 313 F.3d 636, 646 (1st Cir. 2002); see also Bryan Garner et al., The Law of Judicial Precedent § 59 (2016) (detailing exceptions). The parties spar over whether Ms. S. I bars us from considering the theory that the two provisions of MUSER, §§ XVI.5.A(2) and XVI.13.E, contain a single statute of limitations.

For the law of the case doctrine to be a bar in either form, the issue must have been "'actually considered and decided by the appellate court,' or a decision on the issue must be 'necessarily inferred from the disposition on appeal.'" Field v. Mans, 157 F.3d 35, 40 (1st Cir. 1998) (quoting Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd., 41 F.3d 764, 770 (1st Cir. 1994)). In short, "[p]rior holdings, as opposed to dicta, measure the rule's reach." Garner et al., supra, § 54.

Ms. S. I did not reach the issues involved here. The district court concluded that our prior opinion had held that MUSER contained both a look-back term and a filing limitation. The opinion did no such thing. The parties did not dispute and did not brief the MUSER interpretive issue now before us. Instead, Ms. S. I simply used the terminology the parties had used in the briefs, which described § XVI.5.A(2) as the "look-back term" and § XVI.13.E as the "filing limitation." This reading was not, as M. S. calls it, a "basic legal conclusion . . . central to [Ms. S. I's] analysis." It was presented only as "[b]ackground." Ms. S.

- 10 -

<u>I</u>, 829 F.3d at 100-02.  And MUSER played no essential role, explicit or implicit, in any of <u>Ms. S. I</u>'s remand instructions to the district court.  The prior panel's first two remand instructions both dealt only with state administrative law.  <u>See id.</u> at 105-09.  And the third ordered the district court to "reevaluate the[] content" of certain legislative materials.[2]  <u>Id.</u> at 112.

Independently, even if a holding from <u>Ms. S. I</u> did overlap (and none do) with an issue we are now asked to consider, the law of the case doctrine would not be a hurdle.  An exception to the doctrine would justify our addressing the issues here: Everything the panel majority said in <u>Ms. S. I</u> was provisioned on the "insufficient" record in that first appeal.  <u>Id.</u> at 100. Decisions made on an "inadequate record or . . . designed to be preliminary or tentative" are excepted from the law of the case

---

[2]    In guiding the district court's use of legislative evidence, <u>Ms. S. I</u> did remark on MUSER.  Ms. S. had argued that courts can never look at legislative intent in evaluating MAPA compliance, so we noted that "[o]rdinarily, the Law Court does not look beyond language approved by the Legislature to determine the Legislature's intent where, as here, the language is unambiguous." <u>Ms. S. I</u>, 829 F.3d at 110.  This was not a holding that MUSER unambiguously contains two separate timing requirements.  Our directive to the district court was evidence-specific and emphatically was not that legislative intent is irrelevant because of MUSER's clarity.  <u>See id</u> at 110-12.  Further, what we found clear was circumscribed: that the proposed version of § XVI.13.E said "four," not "two."  <u>Id.</u> at 110.

doctrine.  Ellis, 313 F.3d at 647.[3]  In sum, the law of the case doctrine does not bar consideration of the theory that MUSER has one statute of limitations mirroring the IDEA's.  The district court erred.

B.  Waiver

We must deal with one more objection.  Ms. S. contends that the doctrine of waiver prohibits RSU 72 from arguing that MUSER has a single statute of limitations because RSU 72 did not do so in its briefing in Ms. S. I.[4]  RSU 72 was the appellee, not the appellant, in Ms. S. I.  While "an appellee might in some situations be required to raise" an alternative argument supporting affirmance "in its appellate briefs" to preserve that argument for later appeals, this court found no waiver of such an argument in Field v. Mans.  See 157 F.3d at 41-42; see also Field

_____

[3]    Relevant changes in the law -- notably, other circuits' determinations that the IDEA contains a single statute of limitations -- and in the facts -- including new administrative and legislative evidence -- reinforce our conclusion that reconsideration is proper.  Cf. Nkihtaqmikon v. Impson, 585 F.3d 495, 498 (1st Cir. 2009) ("We could revisit our own earlier decision if [the appellant] could show that controlling legal authority has changed dramatically; [or could] proffer significant new evidence, not earlier obtainable in the exercise of due diligence" (internal quotation marks omitted)); Garner et al., supra, § 59 ("[I]n exceptional circumstances involving a dramatic change in controlling legal authority, a court may deviate from the law of the case.").

[4]    RSU 72 developed the argument that MUSER has a single statute of limitations mirroring the IDEA's on remand in the district court.

v. Mans, 516 U.S. 59, 78-79 (1995) (Ginsburg, J., concurring) (suggesting that the argument was not waived and should be considered in future proceedings). In United States v. Moran, we also found no waiver of claims of error which were not raised by defendants as appellees in prior appeal of a "judgment . . . entirely favorable to the appellee."[5] 393 F.3d at 12.

These cases reflect the general rule that "the failure of an appellee to have raised all possible alternative grounds for affirming the district court's original decision, unlike an appellant's failure to raise all possible grounds for reversal, should not operate as a waiver." Schering Corp. v. Ill. Antibiotics Co., 89 F.3d 357, 358 (7th Cir. 1996);[6] see also, e.g.,

---

[5] Ms. S. leans heavily on Moran, but that case does not support her position. Moran ultimately found no waiver by former appellees, reasoning that they had not been required to raise in the first appeal "irrelevant" or "redundant" arguments. 393 F.3d at 12 (quoting Field, 157 F.3d at 41-42).

[6] Ms. S. embraces Schering Corp., 89 F.3d at 358-59, but it hurts rather than helps her. The Seventh Circuit found waiver by a former appellee in circumstances entirely unlike these. The court found waiver of a challenge, omitted in the first appeal, to a trial court's ruling excluding evidence supporting affirmance. See id. In the second appeal, the former appellee sought to reopen the previous ruling based on "newly discovered evidence" -- i.e., the evidence excluded by the district court and not raised in the first appeal. Id. at 359. Schering explicitly distinguished that situation from the one we face, in which "an alternative ground for affirmance [was omitted] in the previous round" by appellee and no waiver of that argument would be found on subsequent appeal. Id. at 358.

- 13 -

Eichorn v. AT&T Corp., 484 F.3d 644, 657–58 (3d Cir. 2007) ("As [appellees in the previous appeal], [defendants] were not required to raise all possible alternative grounds for affirmance to avoid waiving those grounds."); Indep. Park Apartments v. United States, 449 F.3d 1235, 1240 (Fed. Cir.), decision clarified on reh'g, 465 F.3d 1308 (Fed. Cir. 2006) ("As appellee, the government was not required to raise all possible alternative grounds for affirmance in order to avoid waiving any of those grounds."); Crocker v. Piedmont Aviation, Inc., 49 F.3d 735, 740 (D.C. Cir. 1995) (finding no waiver of issue omitted in prior appeal by then-appellee).

The differing roles of appellees and appellants in framing the issues and in presenting arguments justifies differing waiver rules on subsequent appeal. See Crocker, 49 F.3d at 741 (weighing appellees' "procedural disadvantage"). This differentiation also makes practical sense: application of the waiver rule to former appellees' omitted arguments would create "judicial diseconomies." Id. at 741 (emphasis omitted); see also Field, 157 F.3d at 41-42. It would fuel a multiplication of arguments by appellees, even if "entirely redundant." Field, 157 F.3d at 42; see also Crocker, 49 F.3d at 740 ("[F]orcing appellees to put forth every conceivable ground for affirmance might increase the complexity and scope of appeals."). And it would incentivize "dubious cross-appeal[s]" by appellees to fully air their

- 14 -

alternative grounds.  <u>Field</u>, 157 F.3d at 41-42; <u>see also</u> <u>Crocker</u>, 49 F.3d at 741.

Whether application of this general rule is justified "depends on the particular facts" of the case.  <u>Field</u>, 157 F.3d at 41.  And the facts do not support a finding of waiver in RSU 72's appeal.  Ms. S., as appellant, not RSU 72, as appellee, "defined the battleground on the first appeal."  <u>Crocker</u>, 49 F.3d at 740.  Her briefing adopted the look-back term and filing limitation framework.  To be sure, RSU 72 had an opportunity to advance a one-statute-of-limitations reading in its response brief in <u>Ms. S. I</u>, as the basis for an alternative ground on which it should prevail.  But it would have been difficult, if not impossible, for RSU 72's response brief to both defend the district court's decision and to present, as the basis for an alternative ground, a reworking of the interpretative framework assumed by the district court.  And, had RSU 72 done this, it would not have had a chance to answer Ms. S.'s reply brief.

Further, as Ms. S. has conceded, the argument does not apply to MDOE because MDOE was not a party to the first appeal. MDOE, like RSU 72, reads MUSER to contain a single statute of limitations, and has strongly urged us to so hold.  As MDOE and RSU 72 argue, the issue at hand is one of "public concern" -- timelines for IDEA due process hearings affect children, parents, school districts, states, and taxpayers.  <u>Nat'l Ass'n of Soc.</u>

<u>Workers</u> v. <u>Harwood</u>, 69 F.3d 622, 629 (1st Cir. 1995). There is a strong public interest in a clear and correct ruling on the purely legal question of how to read Maine's statute of limitations for IDEA due process hearings. <u>See</u> <u>id.</u> at 627-29 (finding no waiver of publicly important and compelling legal argument); <u>Sindi</u> v. <u>El-Moslimany</u>, 896 F.3d 1, 28 (1st Cir. 2018) (same).

C. <u>MUSER's Statute of Limitations</u>

1. <u>Interpreting the Regulation</u>

We hold that Maine intended to adopt a two-year limitations period that mirrors the IDEA's timing provisions. This intent is evident from the language of the provisions: as noted, MUSER § XVI.5.A(2) mirrors 20 U.S.C. § 1415(b)(6)(B) and MUSER § XVI.13.E mirrors 20 U.S.C. § 1414(f)(C)(3). Further, at § I, MUSER states, "[t]hroughout <u>this regulation the Department has reflected the federal statute and regulatory requirements in non-italicized text</u>," while, "<u>State requirements are in italicized text.</u>" MUSER § I. The provisions that concern us contain no relevant italics; they vary little from the "federal statute and regulatory requirements."[7]

So, we turn to the IDEA to determine how to read MUSER. The federal Department of Education stated in 2016 that "[t]he

_____

[7] Only a state-specific acronym -- "SAU," or school administrative unit -- is italicized in the provisions. <u>See</u> MUSER §§ XVI.5.A(2), XVI.13.E.

statute of limitations in section [1415(b)(6)(B)] is the same as the statute of limitations in section [1415(f)(3)(C)]." Assistance to States for the Education of Children with Disabilities and Preschool Grants for Children With Disabilities, 71 Fed. Reg. 46,540, 46,706 (Aug. 14, 2006). We hold that the IDEA has a single two-year statute of limitations regulating the amount of time to file a complaint after the reasonable discovery date. In holding this, we join the Third and Ninth Circuits. See G.L., 802 F.3d at 604-05; Avila, 852 F.3d at 937.

When Congress writes a statute of limitations, it chooses a rule from among several types. See, e.g., TRW Inc. v. Andrews, 534 U.S. 19, 32 (2001) (discussing various types). One option is the occurrence rule -- that is, counting from the date of the violation. See G.L., 802 F.3d at 613. Another option is the discovery rule, which counts from the date of discovery. See id. Section 1415(b)(6)(B) defies categorization: in counting from the injury date to the reasonable discovery date, it appears to be a hybrid of these two rules. Like our sister circuits, we doubt that Congress intended to invent a new type of timing limit or to sneak a "remedy cap" into § 1415(b)(6)(B). See G.L., 802 F.3d at 613-15; Avila, 852 F.3d at 941-42. Indeed, the Third Circuit traced the hints of the occurrence rule in § 1415(b)(6)(B) to a drafting error during the reconciliation of the House and Senate versions of the 2004 IDEA reauthorization. G.L., 802 F.3d at 622-

- 17 -

23 (explaining that the House version had used the occurrence rule and identifying errors in conforming that version to the Senate's). Section 1415(f)(3)(C), on the other hand, is clear: it establishes a discovery rule. As a result, in the IDEA, a single "discovery rule controls." G.L., 802 F.3d at 613.

Ms. S. disputes that MUSER can also be read to establish a two-year statute of limitations but not a look-back term. She points primarily to MUSER's language. But the reference to the date of the "alleged action" in the text of § XVI.5.A(2) is a replication of the IDEA's drafting mistake, not evidence that Maine intended to set up two separate state standards. Unconvinced by Ms. S.'s textual arguments, we conclude that MUSER follows the IDEA in establishing a single statute of limitations that runs from the reasonable discovery date to the filing date.

In addition to being contrary to the state's intent in designing MUSER, Ms. S.'s reading could put MUSER in active conflict with federal law. Because "§ 1415(b)(6)(B) is simply an inartful attempt to mirror § 1415(f)(3)(C)'s two-year statute of limitations," G.L., 802 F.3d at 604-05; see also Avila, 852 F.3d at 942, the IDEA likely authorizes states to enact a single state-specific statute of limitations, not a look-back term and a filing limitation. In fact, most states that have chosen to enact a state-specific "explicit time limitation," see G.L., 802 F.3d at 617, including Massachusetts, see Michelle K. v. Pentucket Reg'l

- 18 -

Sch. Dist., 79 F. Supp. 3d 361, 372-73 (D. Mass. 2015) (discussing BSEA Hearing Rule I(C)), and New Hampshire, see N.H. Rev. Stat. Ann. § 186-C:16-b, I; see also Pass v. Rollinsford Sch. Dist., 928 F. Supp. 2d 349, 364 (D.N.H. 2013), have done just that: enacted a single statute of limitations. Ms. S. points to no states that have adopted a look-back term and a filing limitation.

2. Application to Ms. S.'s Claims

It follows that Ms. S.'s claims about the 2009-2010 and 2010-2011 school years were untimely when filed in May 2013. As Ms. S. concedes, these claims alleged violations that Ms. S. knew or should have known about during school years 2009-2010 and 2010-2011. The claims were more than two years old when filed, and the version of MUSER in force in May 2013 stated that the statute of limitations was two years. MUSER §§ XVI.5.A(2), XVI.13.E. The district court erred in ruling that Ms. S.'s claims were timely.

We have no reason to reach the state law issue of whether the MDOE complied with MAPA in promulgating the 2010 amendments to MUSER. It does not affect the outcome of the case. If there were no state law procedural errors during the rulemaking or if the errors were insubstantial or harmless, then MUSER's statute of limitations was validly set at two years as a matter of state procedural law. See 5 Me. Rev. Stat. Ann. § 8058(1). Likewise, if procedural errors were to render the change from four to two at § XVI.13.E void under MAPA, then we would conclude that Maine

- 19 -

lacked a valid "explicit time limitation" and so the federal default, also set at two years, would apply. See 20 U.S.C. §§ 1415(b)(6)(B); 1415(f)(3)(C) (emphasis added).

The dissent concedes that the IDEA sets a single time limitations period for due process hearings; that MUSER "is intended to track the federal law"; and (as does Ms. S.) that the time limit at § XVI.5.A(2) was validly changed to two years during the 2010 rulemaking. Nonetheless, the dissent rejects our conclusion that, if there were invalidating procedural errors, the federal default would step in. It protests that we should not apply the federal default because the IDEA does not require states to adopt the federal limitations period. That is true, but it is beside the point here. MDOE has consistently taken the position that MUSER's timing provisions parallel the IDEA's in structure. Significantly, during the 2010 rulemaking, MDOE's concise summary in the rulemaking Notice explained that "the statute of limitations for due process hearings will be changed to the federal standard of two years." That is, MDOE has always viewed MUSER's statute of limitations as tracking the federal law's.[8] The IDEA only provides

---

[8] Although the dissent agrees that MUSER tracks the federal law, it suggests that MDOE has not always held this view. It embraces Ms. S.'s unsupported assertion that a 2011 decision by an MDOE hearing officer, which, in dicta, described § XVI.5.A(2) and § XVI.13.E as distinct, represented the accepted understanding among MDOE hearing officers. But MDOE emphasizes that Ms. S. has pointed to no other, similar statements by hearing officers. And even if she had, MDOE, whose hearing officers are independent, cf.

- 20 -

for one statute of limitations,[9] so it follows that if the 2010 rulemaking somehow left Maine with two different limitations periods, the state lacked its intended "explicit time limitation," and the federal default should govern.

In short, a two-year statute of limitations was in force in 2013 when MS. S. filed her due process hearing request and that request was therefore untimely.

D.    Specific Misrepresentation Exception

Ms. S. finally argues that, even if a two-year statute of limitations applies, her claims should be allowed under the specific misrepresentation exception.  Ms. S. claims that she failed to file earlier because of statements by the district that B.S.'s academic performance made him ineligible for IDEA services. As Maine has implemented the IDEA, academic as well as "functional" performance determine eligibility.  MUSER § II.10-II.11; see also Mr. I v. MSAD No. 55, 480 F.3d 1, 11 (1st Cir. 2007) (describing

---

MUSER § XVI.4.A(4)(c) (requiring the state to enforce due process hearing decisions), says that it has never adopted the view expressed in the hearing officer's 2011 dicta.  MDOE is best positioned to state its views.

[9]    Contrary to the dissent's suggestion, it is immaterial to this case that the Third Circuit's decision in G.L. holding that the IDEA contains a single time limitation for due process hearings post-dated the 2010 rulemaking.  G.L. held, as we do today, that the IDEA has contained a single statute of limitations since the relevant provisions' enactment in 2004.

how federal and state regulations interact to define IDEA-eligible disabilities).

The district court, in its first decision, determined that Ms. S. did not qualify for the exception because no misrepresentations had occurred.  We declined to consider the issue then.  Ms. S. I, 829 F.3d at 113.  Ms. S. does not cross appeal it here but raises it as an alternative ground for relief.

The record reveals no misrepresentations -- intentional or otherwise.  The school district never told Ms. S. that academic performance alone determined eligibility.  Rather, district employees, as the record and the district court's first decision show, discussed B.S.'s academic performance alongside other factors, like his social, behavioral, and emotional development. We hold that Ms. S.'s claims regarding B.S.'s ninth and tenth grade years are not allowed under the specific misrepresentation exception to MUSER's statute of limitations.

### III.

We _reverse_ and _remand_ to the district court with instructions to dismiss with prejudice.

**-Dissenting Opinion Follows-**

**LIPEZ**, **Circuit Judge**, **dissenting**. From the vantage point of hindsight, my colleagues conclude that a clarifying interpretation of federal law rendered for the first time in 2015 cleanses an improper state administrative process that occurred five years earlier. I cannot agree that we should ignore the flaws in the rulemaking process and disregard the purpose of the bypassed procedures: to ensure that the public and Legislature understand, and have an opportunity to comment on, important changes in the law. In my view, the procedural irregularity requires us to affirm the district court's conclusion that a four-year filing deadline applies to Ms. S.'s claims. Accordingly, I respectfully dissent.

**I.**

The statute-of-limitations question at the heart of this appeal has perplexed both the parties and the courts from the outset of the case. In the prior round of decisions, the district court and our panel were challenged by an inadequate record and -- as it turns out -- the parties' incorrect assumptions about the substance of the two provisions of the federal Individuals with Disabilities Education Act ("IDEA") that govern the timeline for requesting a hearing on the claimed denial of a "free appropriate public education" ("FAPE"). See Ms. S. v. Reg'l Sch. Unit 72, 829 F.3d 95 (1st Cir. 2016) ("Ms. S. I"); 20 U.S.C. §§ 1415(b)(6)(B), 1415(f)(3)(C). To some extent, those problems have now been addressed. With respect to the IDEA, the thoughtful

analysis by the Third Circuit in G.L. v. Ligonier Valley School District Authority, 802 F.3d 601, 611-26 (3d Cir. 2015), persuasively demonstrates that the IDEA has a single two-year statute of limitations. Accord Avila v. Spokane Sch. Dist. 81, 852 F.3d 936, 940-44 (9th Cir. 2017). As for the Maine administrative process, the parties on remand "compiled and submitted a more complete record of the rulemaking proceedings" that underlie the state law question. Ms. S. v. Reg'l Sch. Unit 72, No. 2:13-cv-453-JDL, 2017 WL 5565206, at *5 (D. Me. Nov. 20, 2017) ("Ms. S. II").

The new light shed by the recent IDEA interpretation and the expanded state administrative record does not, however, justify the outcome reached by my colleagues. Indeed, as I shall explain, it is now even more apparent that the limitations provisions were unclear for a substantial time. The lack of clarity contributed to the improper method by which the Maine Department of Education ("MDOE" or "the Department") attempted to change the filing deadline under Maine's Unified Special Education Regulation ("MUSER") for claims asserting denial of a FAPE. That flawed attempt should prevent us from finding Ms. S.'s claims time-barred.[10]

---

[10] Because I conclude that, notwithstanding the new arguments offered by the MDOE, Ms. S.'s claims are not barred by a regulatory filing deadline, I do not address the issues of waiver or law of the case.

## A.  The Timeline for FAPE Challenges

Like the majority, I agree with the fully elaborated conclusion of the Third Circuit that the two IDEA provisions pertinent to this case set a single limitations period for requesting a FAPE due process hearing.  See 20 U.S.C. § 1415(b)(6)(B), (f)(3)(C).  I also agree that the equivalent provisions in Maine's analogue to the IDEA -- MUSER -- are intended to track the federal law. See Me. Code R. 05-071, Ch. 101 ("MUSER") §§ XVI.5.A(2), XVI.13.E.[11]  In other words, contrary to the position accepted by both parties in the prior appeal, neither the IDEA nor MUSER has a separate "lookback" provision that limits the remedy for a violation of the FAPE requirement to the two years preceding the reasonable discovery date for the violation.  See G.L., 802 F.3d at 604-05 (observing that "§ 1415(b)(6)(B) is simply an inartful attempt to mirror § 1415(f)(3)(C)'s two-year statute of limitations").  Rather, the remedial period has no fixed limit,

---

[11] Section XVI.5.A(2) largely incorporates the language of 20 U.S.C. § 1415(b)(6)(B) and currently provides that a "due process hearing request must allege a violation that occurred not more than two years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the due process hearing request."

Section XVI.13.E closely tracks the language of 20 U.S.C. § 1415(f)(3)(C) and currently provides that "[a] parent or agency must request an impartial hearing on their due process hearing request within two years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the due process hearing request."

but the plaintiff must file a FAPE challenge within two years of the date the alleged violation was, or reasonably should have been, discovered.  See id. at 616, 620-21.

Under the IDEA, the filing deadline has been two years since Congress first adopted a limitations period in 2004.  Id. at 608-09.  Although the text of the equivalent MUSER provisions largely mirrors the federal law, their stated timelines have not always aligned.[12]  When the Maine Legislature first enacted limitations provisions in MUSER in 2007, it departed from federal law by providing for four-year time periods.[13]  In 2009, however, the MDOE initiated the process for amending several MUSER provisions, including changing the "statute of limitations for due process hearings" to conform to "the federal standard of two years."  Notice of Agency Rule-making Proposal, Nov. 24, 2009.

In the notices of the proposed amendments submitted by the MDOE to the Secretary of State, as required by the Maine Administrative Procedure Act ("MAPA"), see Me. Rev. Stat. Ann. tit. 5, § 8053, the Department stated that the change in timing

---

[12] Although the IDEA and its associated regulations provide the default provisions governing due process hearings, states are permitted to vary some requirements -- including, specifically, the time limitations at issue in this case.  See 20 U.S.C. § 1415(b)(6)(B), (f)(3)(C).

[13] Technically, MUSER initially provided for a four-year period in one of the two provisions at issue and a two-year period for the other, but the latter was "corrected" to four years in 2008.  That change will be discussed below as part of my analysis.

was being proposed "pursuant to [its] intent to not exceed minimum federal requirements and to address cost containment."[14] The materials submitted with the notices are particularly significant to this case. I reproduce below the district court's clear and concise summary of the documents, noting that the district court used the descriptive terminology for the two limitations provisions ("look-back term, for § XVI.5.A(2), and "filing limitation" or "filing deadline," for § XVI.13.E, that the courts and parties previously used to distinguish them:

> Each notice was accompanied by a version of MUSER with strikeouts and underlines indicating the proposed changes. In the proposed changes, the Look-Back Term's strikeouts and underlines indicated a change from four years to two, while the filing deadline provision was untouched. Additionally, MUSER contains an Appendix with a document entitled "Notice of Procedural Safeguards," which is used to instruct the public about the rights guaranteed under MUSER, and it was also revised to reflect the proposed changes. The Notice of Procedural Safeguards contained strikeouts and underlines that corresponded to the proposed change to the Look-Back Term from four years to two years:
>
> > The due process *hearing request* must allege a violation ~~whether a State or federal cause of action under the IDEA~~

---

[14] Two notices were submitted because the MDOE was proposing both an emergency rule change through an accelerated process and a permanent rule change. The proposals were identical in substance but subject to different procedures. See Ms. S. I, 829 F.3d at 105-06. The Secretary of State is charged with publishing notice of the date of the public hearing on a proposed rule. See Me. Rev. Stat. Ann. tit. 5, § 8053.

- 27 -

that happened not more than ~~four~~ <u>two</u> years before you or the SAU [school administrative unit] knew or should have known about the alleged action that forms the basis of the due process *hearing request.*

The Filing Limitation was addressed in the "Due Process Hearing Procedure" section of the Notice of Procedural Safeguards. It indicated two non-substantive corrections and did not show any change to the four-year Filing Limitation:

You or the SAU must request an impartial hearing on a due process *hearing request* within—*four years* of the date you or the SAU knew or should have known about the issue addressed in the *hearing request.*

Thus, both the MUSER Filing Limitation and the explanation of that rule in the Notice of Procedural Safeguards did not indicate any changes to the substance of the four-year Filing Limitation.

<u>Ms. S. II</u>, 2017 WL 5565206, at *3 (footnote omitted) (citations omitted); <u>see also</u> <u>Ms. S. I</u>, 829 F.3d at 103.

The inconsistent treatment of the two provisions also appeared on the form used to obtain comments from members of the public. The comments sheet characterized the proposed change in timing as follows: "§XVI(5)(A)(2) The statute of limitations for due process hearings will be changed to the federal standard of two years, **Page 161.**" <u>Ms. S. II</u>, No. 2:13-cv-00453-JDL (D. Me.), Dkt. No. 71-1, at 12 (emphasis in comments document); <u>see also</u> <u>Ms. S. II</u>, 2017 WL 5565206, at *3. Page 161 of the provisional adoption

proposal displayed the change to two years for § XVI(5)(A)(2), i.e., the provision that came to be known as the "lookback term." See id.; see also Joint App'x at 175. Meanwhile, § XVI.13.E -- the filing deadline -- appeared in the same document on page 171, and it remained unchanged at four years. See 2017 WL 5565206, at *3; Joint App'x at 177.

The Maine Legislature approved the MUSER rule changes in 2010, having reviewed only versions of the proposed revisions that retained the four-year filing limitation in § XVI.13.E. See Ms. S. I, 829 F.3d at 104. Then, without any process to alert either the public or the Legislature that it was departing from the text shown in the provisional adoption document, the MDOE adopted a final amended version of MUSER in which the timing in § XVI.13.E was reduced to two years. See id. Appellants describe this action as a "correction" that was made to remedy "a clerical oversight." DOE Br. at 5, 11. A proposal to increase the timeframe for due process hearings was rejected the following year, see Ms. S. II, No. 2:13-cv-00453-JDL (D. Me.), Dkt. 71-13, at 33-36, and both § XVI(5)(A)(2) and § XVI.13.E thus currently contain two-year periods.

## B. MUSER's Timing Provisions in Practice

The question at the core of this appeal is whether the MDOE's adoption of a two-year filing deadline in § XVI.13.E was a permissible correction of an oversight or a substantive change

that required adherence to formal administrative procedures. Put another way, is the two-year limitations period currently stated in § XVI.13.E invalid because it was enacted unlawfully?

Although my colleagues purport not to reach the "issue of whether the MDOE complied with MAPA in promulgating the 2010 amendments to MUSER," they implicitly accept the oversight rationale. They conclude that the MDOE intended from the outset of the 2009-2010 amendment process to revise both MUSER provisions to reflect a single two-year deadline for due process hearing requests. Consistency was necessarily the objective, they suggest, because MUSER -- like the IDEA -- contains one limitations period that applies to both provisions. Their position is that, because the two provisions operate in tandem, approval of the two-year period in § XVI.5.A(2) (the "lookback term") also constituted approval of the same timeframe for § XVI.13.E (the "filing deadline"). Accordingly, the MDOE's final version of MUSER in 2010 effected the Legislature's intent and corrected a minor drafting error.

The primary problem with the majority's conclusion is the failure to account for the uncertainty that long surrounded the two distinctly worded provisions in both the IDEA and MUSER. Even if my colleagues are correct that the MDOE intended in 2009-2010 to change both timing provisions -- despite all documentary evidence to the contrary -- that intention would not cure the

problems with the rule-making process.  Inexplicably, the majority gives no consideration at all to what the public and Legislature would have reasonably understood in 2009 about the meaning of each provision.  Yet, as the Third Circuit highlighted in unraveling the history of the two IDEA sections, the provisions' differing language had long posed interpretive difficulties.  See G.L., 802 F.3d 610-12.

The sequentially first provision -- i.e., the so-called lookback provision -- allows a remedy based on actions that occurred "not more than two years before the date the parent . . . knew or should have known about" the challenged action.  MUSER § XVI.5.A(2) (emphasis added); see also 20 U.S.C. § 1415(b)(6)(B).  Meanwhile, the second provision sets the filing deadline (for requesting a hearing) at two years after the discovery date, see MUSER § XVI.13.E; 20 U.S.C. § 1415(f)(3)(C).  As the Third Circuit noted, "[t]he differences in the language of these provisions and the fact that they appear to move in opposite directions from the reasonable discovery date, has given rise to confusion." G.L., 802 F.3d at 610.  Indeed, in determining that the two IDEA provisions "reflect the same statute of limitations," id. at 612 (internal quotation marks omitted), the Third Circuit acknowledged that "applying the plain language of the text would force us to give § 1415(b)(6)(B) a meaning that 'turns out to be untenable in light of the statute as a whole.'"  Id. at 612 (quoting King v.

- 31 -

<u>Burwell</u>, 135 S. Ct. 2480, 2495 (2015)). In other words, on their face, the two provisions do not align, and only the court's close examination of context and legislative history revealed their conformity. See <u>id.</u> at 611-12.

In Maine, the same discrepancy in MUSER's language led to the notion of two independent timeframes: the "lookback period" of § XVI.5.A(2) and the "filing deadline" of § XVI.13.E. The wide acceptance of that nomenclature -- and the substantive distinction it denotes -- informed the first round of proceedings in this case. As the MDOE observes, the two experienced special education attorneys who represented the opposing parties treated those terms as "commonly used and ha[ving] distinctly different meanings." MDOE Br. at 24. In addition, there is no challenge in the record to Ms. S.'s representation that attorneys in the field in Maine had consistently treated the two provisions as distinct at least since an MDOE hearing officer adopted that construction in 2011. See <u>Ms. S. II</u>, No. 2:13-cv-00453-JDL (D. Me.), Dkt. 22-5, at 9 (Hearing Officer's Order on Application of Statute of Limitations, Sept. 1, 2011); <u>id.</u> at 17 (referring to "the IDEA's two year look-back provision"). Nor have appellants rebutted Ms. S.'s assertion that the 2011 interpretation was consistently followed thereafter by other Maine hearing officers. To the contrary, the school district acknowledges that "the dichotomy offered by the hearing

officer in 2011 [was] a reading that seemed relatively consistent with some components of the language in question."

The MDOE attempts both to discredit the hearing officer's interpretation and to disclaim any responsibility for the subsequent reliance on it by parties and other hearing officers. The Department emphatically denies that it necessarily was aware of the decision or had an obligation to correct the mistaken view of the law. These protestations defy common sense. The possibility that the Department remained unaware for years of an "incorrect" interpretation of an important component of the statutory scheme for which it was responsible strikes me as absurd. Moreover, even if the Department technically had no affirmative obligation to clarify the law, its failure to do so is inexplicable if, in fact, the MDOE always believed the MUSER timing provisions established a single limitations period.

In any event, regardless of the MDOE's unspoken intention with respect to the MUSER amendments proposed in 2009, the history makes plain that it was far from evident to practitioners and decisionmakers in the field -- i.e., the "experts" charged with day-to-day advocacy or dispute resolution involving the IDEA and MUSER -- that the two provisions stated the same limitations period. Indeed, at least by 2011, they had the opposite understanding.

## C. The Need to Fulfill MAPA Requirements

The interpretive confusion documented above has great significance.  It means that the MDOE was not free to change the timing in § XVI.13.E (the "filing deadline") from four years to two years without engaging in the formal administrative process applicable to major substantive rule changes.[15]  That is so because, given the retention of "four years" in the proposed text of § XVI.13.E disseminated throughout the 2009-2010 rulemaking proceedings, the public and Maine Legislature lacked the required clear notice that the MDOE was proposing a single two-year limitations period.  Indeed, the repeated presentation of four years as the filing time limit would have bolstered the view that the provisions contained independent timelines.  Put another way, the MDOE owed the public and the Legislature a clear statement of its intention to reduce by one-half the time allowed for seeking a FAPE due process hearing.[16]  Instead, the Department effectively

---

[15] The process for adopting a "major substantive rule" -- such as the changed filing limitation at issue here -- is described in detail in Ms. S. I.  See 829 F.3d at 105-06.

[16] The MDOE acknowledges the importance of providing notice to the public of changes in the limitations period.  It points out that the Department could have adopted the emergency version of the rule without a comment period, but "because the Department recognized that the parents of children with disabilities and their advocates would react strongly to what they viewed as a reduction in their rights, the Department elected to provide a public hearing and comment period on the emergency rule as well as the permanent rule."  MDOE Br. at 3 n.2.

told the public that the four-year deadline was to remain unchanged.

The MDOE asserts that the comments submitted during the 2009 administrative proceedings indicated that all concerned understood that the proposal to limit the "statute of limitations" covered both provisions. The Department emphasizes that none of the individuals who commented on the proposed amendments at public hearings held by the MDOE and the Legislature's Education Committee suggested that there was more than one statute of limitations. Hence, the Department posits, no one was misled by the flawed notices and supplemental materials, and the errors in the administrative process were therefore harmless.

This effort to minimize the errors is both unpersuasive and unacceptable. The shorthand label "statute of limitations" may reasonably be applied to a "limitation" on the remedial period.[17] Moreover, the fact remains that every relevant document

---

[17] As we observed in Ms. S. I:

> [T]he phrase "statute of limitations" is used without definition by the MDOE in its public notice statement, by the MDOE Commissioner in her testimony to the Maine Legislature, by many additional witnesses and advocates, and by the Legislature itself. Both the filing limitation and look-back term involve time restrictions, and both periods were originally four years while the parallel federal periods are both two years. Hence, the "statute of limitations" label could be used to describe

- 35 -

depicted a revision only to the provision that was treated thereafter as a limitation on the remedial period. Hence, there was no reason to expect comments from the public on a different limitations provision that ostensibly was <u>not</u> being changed. <u>See</u> <u>Ms. S. II</u>, 2017 WL 5565206, at *9 ("The absence of comments explicitly addressing the Filing Limitation change from four years to two years is not surprising given that the proposed MUSER rules did not describe such a change in the notice or in the Filing Limitation rule, nor did the proposal direct commenters to the page the Filing Limitation appeared on as it did with respect to the Look-Back Term."). The MDOE's casual, unilateral change to such a significant element of the MUSER scheme was thus patently improper.

As well, the MDOE's contention that the inconsistency was merely an oversight pushes against the bounds of plausibility. The Notice of Procedural Safeguards prepared by the Department and disseminated during the 2009-2010 proceedings specified two <u>non-substantive</u> corrections for § XVI.13.E (the "filing deadline"), but it failed to show a change in the number of years. It is difficult to see how a "mistaken" retention of the four-year language could have escaped MDOE attention when the Department

the filing limitation, the look-back term, or both.

829 F.3d at 109.

- 36 -

must have focused directly on the provision to make the non-substantive revisions.  See Ms. S. II, 2017 WL 5565206, at *10 ("A reader could logically conclude from the Notice of Procedural Safeguards that the drafters had looked at the provision, considered what changes were necessary, and decided to make only minor, non-substantive adjustments.").  Hence, even if some individuals within the Department viewed the two provisions to state the same deadline, the drafting inconsistency is compelling evidence that there was no uniform understanding even within the MDOE.  It is therefore unsurprising that practitioners in the field subsequently accepted the hearing officer's assumption of two independent timelines.

To bolster its oversight claim, and in rejecting the need for formal MAPA procedures, the MDOE points out that the same type of "clerical" error accounts for the different time periods contained in the original, 2007 versions of the limitations provisions.  The Department reports that, after final adoption of the MUSER rules in 2007, "the Department discovered several inconsistencies that had slipped through in the rewriting process."  MDOE Reply Br. at 6.  One such inconsistency, the MDOE explains, was retention of the originally proposed two-year limitations period in § XVI.13.E (the "filing deadline") instead of the four-year period that the Legislature had expressly directed for § XVI.5A(2) (the "lookback term").  The MDOE rectified the

inconsistency through a new rulemaking in 2008, explaining in public materials that "[t]he purpose and scope of this rulemaking was to make several corrections not addressed in the [2007 proceedings] to make consistent . . . the statute of limitations at four years in appropriate sections." MDOE Reply Br., Supp. App'x at 21 (quoting Comments and Responses to Proposed Amendments Chapter 101 Public Hearing, Nov. 13, 2007). The change to § XVI.13.E, replacing "two years" with "four years" for the filing deadline, was adopted in April 2008 -- i.e., about a year and a half before the MDOE initiated the MUSER rulemaking proceedings underlying this case.

The MDOE cites the 2007-2008 history as proof that it always construed the timeframes in the two provisions to refer to the same deadline for filing a request for a due process hearing, and it implies that the earlier corrective process validates the "technical, conforming correction" it made in 2010. But regardless of what the MDOE's actions in 2007 and 2008 reveal about the Department's intentions at that time with respect to the two provisions,[18] its handling of the earlier inconsistency cannot legitimize the subsequent flawed process. Among other factors, the earlier change <u>extended</u> the deadline specified in the

---

[18] The "correction" does not necessarily show that the MDOE viewed the two provisions to state the same limitations period; the objective just as easily could have been to adopt a four-year period for each of two independent provisions.

regulation for requesting a due process hearing; now, the MDOE seeks to cut off remedies for students with disabilities. Moreover, the MDOE in 2007-2008 did not unilaterally amend the provision approved by the Legislature. It gave notice to the public of the proposed revision to § XVI.13.E and sought comments. Given the handling of the 2007-2008 "oversight" in the recent past, the Legislature and knowledgeable members of the public in 2009 could fairly presume that the lack of uniformity in the proposed text was intentional, even if it was not.

It bears repeating that confusion abounded concerning the two MUSER provisions and their federal counterparts. The MDOE nonetheless made a significant behind-the-scenes change to a major substantive rule without adhering to the MAPA procedures that are meant to ensure that the public and Legislature are informed of such revisions and have the opportunity to raise concerns. See Ms. S. II, 2017 WL 5565206, at *8-11. That improper process cannot be cured by relying on the Third Circuit's clarifying interpretation of the IDEA more than five years later. See Ms. S. I, 829 F.3d at 108 (noting the Maine Law Court's conclusion that the "circumstances in which invalidation [of a rule] is automatic principally involve a denial of public participation" (quoting Fulkerson v. Comm'r, Me. Dep't of Human Servs., 628 A.2d 661, 664 (Me. 1993)) (alteration in original)); id. at 109 (noting that

"the Legislature at least must have had the opportunity to review the substance of a finally adopted rule").

My colleagues alternatively state that, even if procedural errors rendered the revision of § XVI.13.E void under MAPA, they would conclude that MUSER lacked "a valid 'explicit time limitation'" and would therefore impose the federal default of two years for the filing limitation. See Maj. Op. § II.C.2 (quoting 20 U.S.C. § 1415(b)(6)(B), (f)(3)(C) (emphasis added by majority)). But there is no justification for such a presumptuous step -- that is, overriding a state's prevailing, properly implemented limitations period to the detriment of the individuals the statute is meant to protect. The IDEA does not require lockstep between a state's filing limitations period and the federal timeline, and, if the change made to § XVI.13.E by the MDOE in 2010 is invalid, the four-year deadline remains in place.

Moreover, fairness requires our adherence to the longer filing limitations period. Section XVI.13.E, the provision unilaterally amended by the MDOE, has always been understood to establish the deadline for requesting a due process hearing. Even if we now understand that § XVI.5.A(2) is another statement of that same deadline, rather than an independent "lookback term," we cannot simply disregard MAPA's notice and comment requirements for amending the "filing deadline" in § XVI.13.E. Put differently, this panel's clarifying ruling in this case that federal and state

law each set a single limitations period cannot undo the flaws in 2009-2010 that -- as the district court properly found -- invalidate the MDOE's attempt to reduce the limitations period for requesting a due process hearing.  We cannot undo with a few strokes of the pen the confusion or improper administrative proceedings of the past.

The majority skims over the departure from MAPA's requirements, concluding that the unauthorized change to § XVI.13.E must be given effect in this case simply because the MDOE has now explained why a two-year timeframe is appropriate. That conclusion fails to respect the objective of public participation reflected in Maine's detailed administrative scheme. If the MDOE wants to change the governing four-year statute of limitations, it must do so the right way.  Unlike my colleagues, I cannot condone the MDOE's improper adoption of the reduced filing deadline, contrary to the public disclosures required by law, or the resulting unfair refusal to consider Ms. S.'s claims concerning her son's ninth and tenth grade years.  I therefore respectfully dissent.